1
2
3
4
5

LATHAM & WATKINS LLP
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Phone: (212) 906-1200
Fax: (212) 751-4864

6
7
8
9

Matthew Walch (*pro hac vice* forthcoming)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Phone: (312) 876-7700
Fax: (312) 993-9767

10
11
12
13

Robert J. Ellison (SBN 274374)
robert.ellison@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Phone: (424) 653-5500
Fax: (424) 653-5501

14
15
16
17

Rebekah L. Soule (*pro hac vice* forthcoming)
rebekah.soule@lw.com
555 Eleventh St. NW, Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Fax: (202) 637-2201

18

*Counsel for Defendant Peloton Interactive, Inc.*

19
20

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

21
22
23
24
25
26
27
28

LULULEMON ATHLETICA
CANADA, INC., a Canadian
corporation,

        Plaintiff,

    v.

PELOTON INTERACTIVE, INC., a
Delaware corporation,

        Defendant.

CASE NO. 2:21-CV-09252-RGK-SHK

**PELOTON'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS,
TRANSFER, OR STAY**

<u>Hearing</u>
Date: February 28, 2022
Time: 9:00 AM
Courtroom: 850
Judge: R. Gary Klausner

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................1

II.    FACTS AND PROCEDURAL HISTORY ......................................3

III.   THIS COURT SHOULD ALLOW THE NEW YORK COURT
       TO DETERMINE WHICH CASE SHOULD PROCEED ..........7

IV.    SHOULD THIS COURT CHOOSE NOT TO DEFER,
       DISMISSAL IS WARRANTED UNDER THE FIRST-TO-
       FILE RULE, OR TRANSFER UNDER 28 U.S.C. § 1404 ..........8

V.     LULULEMON'S ALLEGATIONS OF TRADE DRESS
       INFRINGEMENT AND UNFAIR COMPETITION SHOULD
       ALSO BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6) ......14

       A.     LULULEMON'S TRADE DRESS INFRINGEMENT
              CLAIM SHOULD BE DISMISSED ................................15

              1.     LULULEMON FAILS TO ADEQUATELY
                     IDENTIFY ITS PURPORTED TRADE DRESS..................15

              2.     LULULEMON FAILS TO ALLEGE
                     SUFFICIENTLY THAT THE ALIGN TRADE
                     DRESS IS NON-FUNCTIONAL ............................17

       B.     LULULEMON'S FALSE DESIGNATION, PASSING
              OFF, AND UNFAIR COMPETITION CLAIMS
              SHOULD BE DISMISSED ................................................18

VI.    CONCLUSION..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ...................................................................7

*Arrowhead Indus. Water v. Ecolochem, Inc.*,
  846 F.2d 731 (Fed. Cir. 1988) ..............................................................2, 6

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ...............................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................14, 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................14

*Benebone LLC v. Pet Qwerks, Inc.*,
  No. 20-cv-00850, 2020 WL 8732321 (C.D. Cal. Sept. 30, 2020).......19

*Bryant v. Oxxford Exp., Inc.*,
  181 F. Supp. 2d 1045 (C.D. Cal. 2000) ..................................................9

*Buso v. Penguin Trading, Inc.*,
  No. CV 17-7025, 2017 WL 6557429 (C.D. Cal. Dec. 22, 2017).......10

*In re Cinemark Holdings, Inc.*,
  839 F. App'x 476 (Fed. Cir. 2020) .........................................................8

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) .................................................................18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)..................................................................................19

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  No. CV 15-769, 2015 WL 12731929 (C.D. Cal. May 8, 2015).....17, 18

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
  737 F.3d 704 (Fed. Cir. 2013) .................................................................7

*Genentech v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ...................................................................7, 9

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .......................................................................13

*Glassybaby, LLC v. Provide Gifts, Inc.*,
  No. C11-380, 2011 WL 2218583 (W.D. Wash. June 6, 2011) .........................18

*Int'l Jensen Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) ...............................................................................15

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
  544 F. Supp. 2d 949 (N.D. Cal. 2008)............................................................8, 9

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ...........................................................................11

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) .........................................................................17

*Lepton Labs, LLC v. Walker*,
  55 F. Supp. 3d 1230 (C.D. Cal. 2014) ..............................................................15

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) ......................................................................7, 8

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) .......................................................................9, 11

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
  817 F.3d 1123 (9th Cir. 2016) .........................................................................18

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  No. 2:20-cv-04556, 2020 WL 6821013 (C.D. Cal. Oct. 29, 2020).............16, 18

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
  989 F.2d 1002 (8th Cir. 1993) ...........................................................................9

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)...........................................................................................12

*R & A Synergy LLC v. Spanx, Inc.*,
    No. 17-cv-09147, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ................*passim*

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
    51 F.3d 1037 (Fed. Cir. 1995) .........................................................................2

*Sleep Sci. Partners v. Lieberman*,
    No. 09-04200, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ....................16, 17

*Sugarfina, Inc. v. Sweet Pete's LLC*,
    No. 17-cv-4456, 2017 WL 4271133 (C.D. Cal. Sept. 25, 2017)..................17, 19

*Switchmusic.com., Inc. v. U.S. Music Corp.*,
    416 F. Supp. 2d 812 (C.D. Cal. 2006) ............................................................15

*TCT Mobile (US) Inc. v. Cellular Communications Equipment LLC*,
    2020 WL 8172714 (C.D. Cal. July 31, 2020)......................................................8

*VIZIO, Inc. v. Pragmatus Telecom, LLC*,
    No. SACV 14-00462, 2014 WL 12584306 (C.D. Cal. June 18, 2014)...............7

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007)............................................................16

*Ward v. Follett Corp.*,
    158 F.R.D. 645 (N.D. Cal. 1994)........................................................................8

**STATUTES**

15 U.S.C. § 1125(a) ...............................................................................................6, 20

28 U.S.C. § 1404...............................................................................2, 8, 11, 14

Cal. Bus. & Prof. Code § 17200 ....................................................6, 18, 19, 20

**RULES**

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................*passim*

## I.     INTRODUCTION

This case should either be stayed or dismissed because lululemon's claims are duplicative of Defendant Peloton Interactive Inc.'s ("Peloton") first-filed declaratory judgment action in the United States District Court for the Southern District of New York.   In response to Plaintiff lululemon athletica canada inc.'s ("lululemon") baseless threats of design patent and trade dress infringement, Peloton exercised its right to confront that threat and obtain legal certainty under the Declaratory Judgment Act by filing a declaratory judgment complaint in the New York Court (the "New York Action").   Peloton filed in New York because it was the only logical forum based on the parties' prior dealings and lululemon's allegations.   Instead of simply filing counterclaims in the already-filed New York Action, lululemon filed the above-captioned action in this district—which is home to neither party and has little connection to the parties' relationship or the claims at issue—asserting largely identical patent and trade dress infringement claims as those at issue in the New York Action and adding new, albeit substantially related, claims of unfair competition under federal and California law based on its infringement allegations.

The long recognized first-to-file rule adopted by the Federal Circuit requires that the second-filed suit be stayed and/or dismissed in favor of the first-filed New York Action.   Under the first-to-file rule, as the second-filed court, this Court should stay this Action to permit the first-filed court to determine which case should proceed.   Should this Court choose not to defer to the New York Court, under the parameters of the first-to-file rule, it should dismiss lululemon's Complaint in its entirety, transfer the action to New York, or at the very least dismiss lululemon's claims for trade dress infringement and unfair competition claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under the first-to-file rule, this Action, as the second-filed action, should be dismissed "unless considerations of judicial and litigant economy, and the just and

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

effective disposition of disputes, require otherwise." *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (internal citation omitted).  Such considerations typically include an analysis of the same factors considered in a transfer of venue analysis under 28 U.S.C. § 1404, such as the location of the parties, the witnesses, and the evidence; the locus of the dispute; the convenience and availability of third party witnesses; and, in the event of a declaratory judgment action such as the New York Action, whether the plaintiff in the first-to-file action filed an "improperly anticipatory" declaratory judgment action.  Even if the Court does not rule in favor of dismissal, it should transfer the Action pursuant to a consideration of these factors.

In lululemon's pending motion to dismiss the New York Action, it focused on the last factor addressing the intended purpose of the first-filed suit and repeatedly attacked Peloton and its outside counsel, arguing that Peloton "misled" lululemon to deprive lululemon of its choice of venue and that the New York Action is therefore "improperly anticipatory."  Peloton expects lululemon will make the same flawed arguments here.  Yet under the Declaratory Judgment Act, a party met with a threat of a future lawsuit is not required to sit back and choose between "the incurrence of a growing potential liability for patent infringement and abandonment of their enterprise[]," while waiting to see if the threat of a lawsuit is acted upon.  *Arrowhead Indus. Water v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988).  Peloton's choice to exercise its right to seek certainty in relation to lululemon's claims does not make its request for a declaratory judgment in New York "improperly anticipatory."  Moreover, Peloton did not mislead lululemon in any respect in its communications in advance of filing the New York Action.

And as the facts detailed below show, the Southern District of New York is the most logical and convenient forum for hearing the parties' dispute.  Peloton is headquartered in New York, and its apparel team, documents, and product samples

relevant to lululemon's allegations are all located in New York City. Moreover, **lululemon's** Peloton account representatives are primarily based in New York City. Peloton simply had no reason to suspect that lululemon had any intent to litigate the parties' dispute anywhere other than in New York.

Notwithstanding the foregoing, should this Court proceed to consider lululemon's claims on the merits, dismissal of lululemon's trade dress infringement and unfair competition claims are still separately warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. lululemon does not adequately identify what its purported trade dress is, which also sabotages its argument that its alleged trade dress is non-functional. lululemon's unfair competition claims under the Lanham Act and California law, which are inextricably linked, also fail. lululemon neither pleads that Peloton sold lululemon products and attempted to pass them off as Peloton products, nor that Peloton tried to pass off its own products as lululemon products. For these reasons and as explained in more detail below, this Court should stay, dismiss, and/or transfer lululemon's Complaint.

## II.    FACTS AND PROCEDURAL HISTORY

While Peloton is best known for its revolutionary interactive fitness platform, Peloton is also a key player in the active wear apparel market. Since 2014, Peloton has offered a series of co-branded products with a number of third-party apparel brands. Peloton's New York City-based apparel team would place wholesale orders for products trusted by its instructors, members, and employees that were designed and manufactured by other companies. Declaration of Julie Whisler in Support of Defendant's Motion to Dismiss, Transfer, or Stay ("Whisler Decl."), ¶¶ 3-4. Then, with the permission of those companies, Peloton would add its trademarks to those products and sell them directly to Peloton customers. *Id.* For example, Peloton has sold the Strappy Bra and High Neck Bra (both of which lululemon alleges infringe its design patents) manufactured by the apparel company WITH and co-branded

with Peloton's marks. *Id.* ¶ 24; Exhibit I to the Declaration of Rebekah L. Soule in Support of Defendant's Motion to Dismiss, Transfer, or Stay ("Soule Decl."), 147.

In early 2017, Peloton entered a co-branding agreement with lululemon's U.S. affiliate, lululemon USA inc. (f/k/a lululemon athletica USA inc., "lululemon USA"), a Nevada corporation. Both lululemon and lululemon USA's headquarters and corporate officers are located in British Columbia, Canada. Complaint ("Compl."), ECF No. 1, ¶ 15; Soule Decl. Ex. C, 56; Soule Decl. Ex. E, 70 (¶¶ 8-9). While a Peloton representative in New York City signed the parties' co-branding agreement, no one from lululemon (or any of its affiliates) counter-signed the form agreement. Soule Decl. Ex. D, 61. The agreement provided that it would be governed by the laws of British Columbia and that the courts of British Columbia would have non-exclusive jurisdiction to hear any disputes arising out of the agreement. *Id.*

Peloton's co-branding relationship with lululemon was based in New York. During the course of their co-branding relationship, Peloton's apparel team and lululemon's New York-based sales representatives regularly met in New York City at either Peloton's offices or one of lululemon's New York City locations. Whisler Decl. ¶¶ 14, 17. Between 2017 and 2021, the parties met more than ten times in New York, while they only met twice in California—once in 2019 and once in 2020. *Id.* ¶ 18. The parties also met once in Vancouver, Canada. *Id.* ¶¶ 17, 19.

The parties amicably dissolved their co-branding partnership in 2021. *Id.* ¶ 23. The parties' last meeting involving the relationship took place via videoconference, with Peloton attendees participating from New York. *Id.* Peloton's decision to end the relationship stemmed from demand for Peloton apparel outpacing supply—the burdensome and time-intensive process of purchasing lululemon products and additional turn-around time required for sending the products to a printer to add Peloton branding was no longer workable. Soule Decl.

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

Ex. J, 154 (¶¶ 17-18).  Given the high demand from customers, Peloton set about developing its own private label active wear and accessories, Peloton Apparel, which launched in September 2021.  Soule Decl. Ex. F, 83.

On November 11, 2021, Peloton received a letter from lululemon's outside counsel, alleging that six apparel products offered for sale by Peloton—including co-branded products that Peloton has sold since 2015—infringe certain lululemon design patents and trade dress.  Soule Decl. Ex. G, 85-86.  Specifically, lululemon alleged that five of Peloton's products infringe the following design patents held by lululemon: U.S. Design Patent Nos. D709,668; D759,942; D798,539; D836,291; D903,233; and D923,914.  *Id.*  lululemon also alleged that another Peloton co-branded apparel product designed and produced by a third party manufacturer infringes lululemon's purported trade dress rights in its Align pant, and that Peloton may have misappropriated lululemon's trade secrets.  *Id.*  lululemon also demanded that Peloton cease and desist from selling any of the accused products immediately and produce to lululemon essentially all documents in Peloton's possession regarding the parties' former co-branding relationship by November 19.  *Id.*  The letter also included a general threat of litigation, stating that lululemon would "file a Complaint for patent and trade dress infringement and trade secret misappropriation in federal court" if Peloton did not comply.  *Id.*  But the letter did not indicate in which federal court or when lululemon might file suit.  *Id.*

Shortly after receiving lululemon's November 11 letter, Peloton retained outside counsel, who informed lululemon on November 15 that it was unlikely that Peloton would be in a position to respond by lululemon's arbitrary November 19 deadline.  Soule Decl. Ex. H, 145.  Instead of demanding an immediate response— or filing a complaint—lululemon offered to extend its deadline and asked Peloton when it thought it might be able to provide a response.  *Id.* at 144-45.  Making no promises as to how it would respond to lululemon's demands, Peloton candidly

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

stated that it thought it would be in a position to respond by November 24, three business days after lululemon's original deadline. *Id.* at 144. None of the communications from either Party indicated any desire to engage in negotiations.

Once Peloton completed its analysis of the claims in the letter, Peloton determined that lululemon's demands and claims lacked merit and that lululemon's vague threats posed a risk to Peloton's reputation and business relationships. Moreover, the legal ambiguity of lululemon's claims presented a challenge to Peloton's business. Peloton needed to make decisions quickly about what apparel products it would sell in upcoming seasons, given the long lead time required to bring those products to market. Whisler Decl. ¶ 5. So instead of choosing between "the incurrence of a growing potential liability for patent infringement and abandonment of their enterprise[]," Peloton filed the New York Action on November 24, seeking a declaratory judgment that its apparel products do not infringe the design patents or alleged Align trade dress identified in lululemon's November 11 letter. *See Arrowhead*, 846 F.2d at 735. Peloton notified lululemon of the New York Action immediately, providing a courtesy copy of its Complaint and detailing the fundamental flaws in lululemon's threatened trade secret misappropriation claim in a separate letter sent to lululemon's outside counsel. Ex. I, 147-49.

Instead of answering or filing any counterclaims in the New York Action as it could have done, lululemon filed the present action in this District on November 29, 2021. lululemon's Complaint alleges infringement of the same design patents and purported Align trade dress identified in its November 11 letter and adds claims of unfair competition under 15 U.S.C. § 1125(a) and California Business & Professions Code § 17200 *et seq. E.g.*, Compl. Notably, lululemon did not assert the trade secret misappropriation claims referenced in its November 11 letter. Soule Decl. Ex. G, 86.

lululemon filed a motion to dismiss the New York Action on January 7, 2022.

Soule Decl. Ex. A, 6.  Peloton filed its opposition on January 21 based on the fact
that the New York Action is the first-filed case and that the Southern District of New
York has the closest ties to the dispute.  Soule Decl. Ex. B, 25-55.  lululemon's reply
is due on February 1, 2022.

## III.   THIS COURT SHOULD ALLOW THE NEW YORK COURT TO DETERMINE WHICH CASE SHOULD PROCEED

When suits are filed in different federal forums, "[t]he general rule favors the
forum of the first-filed action, whether or not it is a declaratory action."  *Genentech
v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *Alltrade, Inc. v. Uniweld
Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) ("[First-to-file rule] may be invoked
'when a complaint involving the same parties and issues has already been filed in
another district.'") (internal citation omitted).  "The 'first-to-file rule' is a doctrine
of federal comity, intended to avoid conflicting decisions and promote judicial
efficiency."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012); *see
also VIZIO, Inc. v. Pragmatus Telecom, LLC*, No. SACV 14-00462, 2014 WL
12584306, at *1 (C.D. Cal. June 18, 2014) (same).  This rule is especially important
in patent disputes, such as this one, as it ensures "national uniformity in patent
practice."  *Genentech,* 998 F.2d at 937.  "Resolution of whether the second-filed
action should proceed presents a question sufficiently tied to patent law that the
question is governed by [Federal] circuit[] law."  *Futurewei Techs., Inc. v. Acacia
Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

Here, there is no dispute that the New York Action was filed on November
24, 2021, **before** the present action was filed on November 29, 2021.  Compl. ¶ 7.
lululemon was aware of the New York Action when it filed this suit—counsel for
Peloton informed lululemon of the New York Action on the same day it was filed
and provided a courtesy copy of the complaint.  Soule Decl. Ex. I, 147.  The New
York Action and the present action involve identical parties and issues in dispute.

Soule Decl. Ex. K, 182 (letter from lululemon to the New York Court admitting that "[t]here is complete identity of claims").

Critically, the first-to-file rule urges that this Court, as the second-filed court, defer to the Southern District of New York to decide which of the parties' competing cases should proceed. *See In re Cinemark Holdings, Inc.*, 839 F. App'x 476, 478 (Fed. Cir. 2020) ("Under the first-to-file rule, where there is complete or nearly complete overlap between two cases, the usual rule is for the court of first jurisdiction to resolve the issues."); *TCT Mobile (US) Inc. v. Cellular Communications Equipment LLC,* 2020 WL 8172714, *3-4 (C.D. Cal. July 31, 2020) (deferring to the first-filed court to consider exceptions to the first-to-file rule). It further militates against allowing the present action to proceed pending the New York Court's resolution of the issue, as allowing both cases to proceed simultaneously would present issues of potentially conflicting decisions and waste of judicial resources. *See Merial Ltd.*, 681 F.3d at 1299.

Accordingly, Peloton respectfully requests that the Court stay and hold this action in abeyance while the New York court decides which of the cases should proceed. Should the New York Court agree with Peloton and proceed with the first-filed New York Action, Peloton respectfully requests that this Court then dismiss lululemon's Complaint under the first-to-file rule. *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 963 (N.D. Cal. 2008) ("Dismissal is proper where the court of first filing provides adequate remedies."); *see also, e.g.*, *Ward v. Follett Corp.*, 158 F.R.D. 645, 650 (N.D. Cal. 1994) (dismissing action pursuant to first-to-file rule).

## IV.   SHOULD THIS COURT CHOOSE NOT TO DEFER, DISMISSAL IS WARRANTED UNDER THE FIRST-TO-FILE RULE, OR TRANSFER UNDER 28 U.S.C. § 1404

Even if this Court were to decide this issue before the New York Court, the

first-to-file rule warrants dismissal of lululemon's second-filed Complaint.   The first-to-file rule applies even where the first-filed case is a declaratory judgment action:   "[w]hen the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action." *Genentech*, 998 F.2d at 938; *see also Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) (finding that "the objectives of the Declaratory Judgment Act would be met by allowing the case to be heard by the California court, rather than by deferring to the forum of the later-filed suit."). Despite moving to dismiss the New York Action, lululemon has made no claim that the New York Court could not sufficiently address all of the issues in dispute between the parties.

In fact, the only argument lululemon has raised as to why this Action should proceed instead of the New York Action, is that, as the true plaintiff, lululemon should be entitled to its choice of venue and that by making misrepresentations and filing a purportedly improper anticipatory declaratory judgment action, Peloton has sought to deprive lululemon of its preference. *See e.g.*, Soule Decl. Ex. A, 6. This is not the case. And though lululemon's venue preference is a consideration under both a first-to-file and a transfer of venue analysis, the results of both analyses are the same—this dispute should be and is best heard in New York.

The facts and circumstances leading to Peloton's filing of the New York Action are far from those where courts have found a declaratory judgment action to be "improperly anticipatory." While lululemon's letter put Peloton "on notice that [lululemon] was at least considering filing suit," it "'gave no indication that a lawsuit was imminent, or that [lululemon] was doing anything more than blowing smoke about a potential lawsuit.'" *Bryant v. Oxxford Exp., Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000) (quoting *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d

1002, 1007 (8th Cir. 1993); *Intersearch Worldwide*, 544 F. Supp. 2d at 960 ("A letter which suggests the possibility of legal action . . . in order to encourage or further a dialogue, is not a specific, imminent threat of legal action."). lululemon said nothing about when it would file suit, and Peloton had no obligation to wait around and see.

As noted above, lululemon has accused Peloton of making misrepresentations to induce lululemon to hold off on filing its own action so that Peloton could forum-shop—asserting such conduct also makes the New York Action improperly anticipatory. Yet lululemon can point to nothing in Peloton's communications to support its assertions. Peloton said nothing to indicate it wished to negotiate, and it did not ask lululemon to hold off on filing a complaint. *Buso v. Penguin Trading, Inc.*, No. CV 17-7025, 2017 WL 6557429, at *3-7 (C.D. Cal. Dec. 22, 2017) (refusing to apply the first-to-file rule when party filed its declaratory judgment action after asking the other party to hold off on filing suit for one day so that counsel could respond on money aspects related to prior settlement discussions, but transferring case to first-filed venue anyways based on convenience analysis). Nor did Peloton indicate how it would respond. The communications between the parties simply do not constitute the types of misrepresentations and bad faith that have led courts to find actions to be "improperly anticipatory."

Moreover, lululemon's argument about Peloton's motivation makes no sense. Peloton had no reason to believe a forum-shopping race was necessary; New York is the venue most connected to the parties' relationship and the allegedly infringing conduct. lululemon had never shown any preference for having disputes heard in California courts previously. It is not a California corporation; it is Canadian. It has no California affiliates; lululemon's U.S. affiliate that Peloton contracted with under the co-branding agreement was a Nevada corporation. Soule Decl. Ex. C, 56; Soule Decl. Ex. D, 61. lululemon is also not headquartered in California; its principal place of business is Vancouver, Canada. Comp. ¶ 15. Peloton simply had no reason to

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

believe lululemon would file anywhere other than New York.[1]

Furthermore, the "improperly anticipatory" exception to the first-to-file rule lululemon advances is not the *only* consideration courts take into account when analyzing whether to depart from the first-to-file rule. Courts must also consider the convenience factors under 28 U.S.C. § 1404(a), which ordinarily provides that a case may be transferred "[f]or the convenience of parties and witnesses." *See Micron Tech.*, 518 F.3d at 904-05 (explaining that the district court "must weigh the factors used in a transfer analysis as for any other transfer motion" in deciding whether to maintain jurisdiction over a first-filed action). The transfer factors include: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). A review of these factors shows that the proper forum for hearing the parties' dispute is the Southern District of New York:

***Location of Relevant Agreements***: While this case does involve patent and trade dress infringement claims, lululemon, in statements to the New York Court,

---

[1] While lululemon has shown a preference for litigating in Vancouver, Canada, its home venue, Canada is not an option, given lululemon asserted claims for violations of U.S. patents and U.S. law. lululemon has also litigated in the Southern District of New York a number of times and has even affirmatively filed a trade dress infringement action there. Soule Decl. Exs. L, 184, and M, 217. Notably, the other patent and trademark infringement cases lululemon has filed were primarily in the Northern District of Illinois, with 28 cases there, followed by the District of Delaware with 2 cases. Soule Decl. Ex. N, 219. The ***only other*** case lululemon has filed in this District was for trademark infringement and counterfeiting against a defendant corporation and an ***individual*** defendant who resided in California. Soule Decl. Ex. O, 227-28.

acknowledged that "[t]he parties' current dispute has its origins in a co-branding agreement entered by the parties in 2016." Soule Decl. Ex. K, 181. The parties' co-branding relationship began in and primarily took place in New York. Whisler Decl. ¶¶ 12, 14, 17, 22, 23. The co-branding agreement was also executed by Peloton in New York. *Id.* ¶ 12; Ex. D, 61 (as its own form agreement, lululemon did not countersign).

***State Most Familiar With Governing Law***: This factor is neutral, as both federal courts are equally adept. And while lululemon has chosen to plead a single claim under California law, it is by no means determinative, especially where it could have (and has previously) filed a near identical claim under New York law. Soule Decl. Ex. L, 210 (¶¶ 130-34) (asserting New York law unfair competition claim).

***Plaintiff's Choice of Forum***: While lululemon may prefer this case to be heard before this Court, its preference should be given little weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (stating that, when a plaintiff is foreign, the presumption in favor of its choice of forum is "much less reasonable").

***Parties Contacts with Chosen Forums***: This factor also weighs in favor of New York, which is where Peloton is headquartered and its apparel team is based. Whisler Decl. ¶¶ 1, 8. In contrast, lululemon is not headquartered in this District, let alone California; rather, it is headquartered in Vancouver, Canada. Compl. ¶ 15.

***Contacts Relating to Cause of Action***: There is no dispute that the parties' co-branding relationship was centered in New York. Moreover, lululemon's allegations hinge on Peloton's decision to buy and sell the six Accused Products— decisions that were made in New York City by members of Peloton's apparel team at Peloton's headquarters in New York. Whisler Decl. ¶¶ 4, 24.

***Difference in Costs***: Litigating this dispute in this District is bound to be expensive for both parties, as neither is at home here. More importantly, litigating this dispute here places a substantial burden on Peloton, without a correlating benefit

1    to lululemon.  Increasing Peloton's expenses is not a reason to favor lululemon's

2    preferred forum.

3        ***Availability of the Compulsory Process***:  Several of the Accused Products

4    identified by lululemon are sold by Peloton but were purchased wholesale from other

5    apparel manufacturers, *i.e.*, WITH and Nike.   Whisler Decl. ¶ 24.   The

6    representatives from those companies with whom Peloton works are all located in

7    New York City, outside of this Court's trial subpoena power but well within the

8    bounds of the New York court's trial subpoena power.  *See id.*  Moreover, the third-

9    party designer with whom Peloton collaborated to design the accused Peloton private

10   label products is also based in New York City.  *Id.* ¶ 25.   Given the allegedly

11   infringing products lululemon has identified, the suppliers and designers of these

12   products would offer key testimony regarding the development and purchase of the

13   products at issue.  Absent the trial subpoena power of the New York Court, Peloton

14   has no way to compel their cooperation to take time away from their own jobs and

15   families and appear at trial on the other side of the country, especially where doing

16   so may put their employers in lululemon's line of fire.

17       ***Access to Sources of Proof:***  With respect to evidence, the Federal Circuit has

18   explained that "'[i]n patent infringement cases, the bulk of the relevant evidence

19   usually comes from the accused infringer,'" so the location of Peloton's evidence

20   should outweigh the location of lululemon's evidence.  *In re Genentech, Inc.*, 566

21   F.3d 1338, 1345 (Fed. Cir. 2009) (internal citation omitted).  Here, Peloton's apparel

22   team is located in its New York City headquarters, so not only will key Peloton party

23   witnesses be located in the Southern District of New York, but likewise practically

24   all of the relevant documents and other physical objects will as well.  Whisler Decl.

25   ¶¶ 6-8.  Further, all of the lululemon employees with whom Peloton dealt with

26   regularly over the course of the parties' co-branding relationship were located in

27

28

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

New York or Canada, not California.  Whisler Decl. ¶ 14.[2]

As reviewed above, the weight of the convenience factors favoring venue in New York far outweighs any deference which might be due to lululemon's choice of forum, especially where lululemon's choice is not based on its own convenience, but rather the inconvenience to Peloton.  The outcome of this review is two-fold. ***First***, it shows that the first-filed New York Action should proceed instead of this action.  ***Second***, it shows that ***even if*** the present action had actually been the first-filed suit—or if Peloton had not filed the New York Action—this case should still ultimately be heard in New York following a traditional transfer of venue motion.

Thus, in the alternative, transfer of this Action to the Southern District of New York under 28 U.S.C. § 1404(a) for consolidation is warranted for the same reasons supporting dismissal of this Action.

## V.    LULULEMON'S ALLEGATIONS OF TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION SHOULD ALSO BE DISMISSED UNDER FED. R. CIV. P. 12(B)(6)

Should this Court not Stay, Dismiss, or Transfer this Action in its entirety, it should at minimum still dismiss lululemon's claims for trade dress infringement and unfair competition.  To pass muster under Fed. R. Civ. P. 12(b)(6), lululemon's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must plead sufficient facts such that the Court can "draw the reasonable inference

---

[2] In the New York Action, lululemon provided a declaration indicating that Peloton representatives visited California twice to decide what lululemon products it would purchase as part of the cobranding relationship.  Ms. Whisler's declaration submitted in support of Peloton's Motion to Dismiss confirms that the two meetings that occurred in California were the only two to ever occur there, and that the majority of meetings occurred in New York with lululemon representatives primarily based in New York.  Whisler Decl. ¶¶ 17-21.

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient.  *Id.*  lululemon's conclusory allegations of trade dress infringement and unfair competition fail under this rule.

### A.   lululemon's Trade Dress Infringement Claim Should Be Dismissed

To adequately plead a claim of trade dress infringement, lululemon's Complaint must identify its trade dress with particularity, including the "total image of the product . . . [and] features such as the 'size, shape, color, color combinations, texture or graphics' of the product." *R & A Synergy LLC v. Spanx, Inc.*, No. 17-cv-09147, 2019 WL 4390564, at *3 (C.D. Cal. May 1, 2019) (quoting *Int'l Jensen Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)).  Once lululemon has identified its trade dress, it must establish that (1) the trade dress is non-functional; (2) the trade dress is inherently distinctive or has acquired "secondary meaning;" and (3) there is a substantial likelihood of consumer confusion between lululemon's and Peloton's products.  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citation omitted).  lululemon's Complaint fails to adequately identify its purported trade dress or explain how its trade dress is non-functional.[3]

### 1.   lululemon Fails to Adequately Identify Its Purported Trade Dress

Courts require a plaintiff to "allege[] a complete recitation of the concrete elements of its alleged trade dress." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014).  This is necessary so that defendants are provided with sufficient notice of what specifically the plaintiff considers to be its trade dress.

---

[3] While Peloton has sought a declaratory judgment that it has not breached lululemon's Align trade dress in New York, it remains for lululemon to elucidate what its alleged trade dress is in its Answer to the New York Action and establish that its alleged trade dress is valid.  A declaratory judgment action does not transfer the burden of proof.  *Switchmusic.com., Inc. v. U.S. Music Corp.*, 416 F. Supp. 2d 812, 820 n.8 (C.D. Cal. 2006).

MEMORANDUM I/S/O PELOTON'S MOTION TO DISMISS, TRANSFER, OR STAY

*Sleep Sci. Partners v. Lieberman*, No. 09-04200, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).   A plaintiff cannot claim trade dress protection over ordinary product design, as doing so "would create a monopoly in the goods themselves." *R & A Synergy*, 2019 WL 4390564, at *4 (dismissing trade dress claim under Rule 12(b)(6)).   Thus, even if there is a showing of secondary meaning to a product design, a plaintiff cannot seek trade dress protection "'(1) if the definition of the product design is overbroad or too generalized; (2) if a product design is the basic form of a type of product; or (3) if the product design is so common in the industry that it cannot be said to identify a particular source.'" *Id.* (quoting *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007)).

lululemon's Complaint fails to identify with any particularity the "concrete elements" of its purported Align Trade Dress.   And even if lululemon **has** identified such elements, they are generic to the design of athletic wear leggings.

lululemon's Complaint devotes a scant two paragraphs to identifying its purported Align trade dress.   *See* Compl. ¶¶ 27-28.   In paragraph 27 of the Complaint, lululemon includes a picture of a pair of dark grey leggings, stating the photo is merely "an example" of its trade dress.   lululemon makes no claim that any particular color, pattern, or fabric constitutes its Align trade dress, and instead claims that its trade dress "***includes but is not limited to*** a pair of tight athleisure pants having a waistband and stitching as shown in the example above [in paragraph 27]." *Id.* ¶ 28 (emphasis added).   Alleging pants "having a waistband and stitching" as a trade dress is clearly insufficient.   Moreover, it is entirely unclear what lululemon refers to in the picture as unique to its Align pant, which is made even more unclear when looking at the range of styles lululemon offers under the name "Align pant." Soule Decl. Ex. P, 245.   Indeed, courts routinely find this type of non-limited vague description insufficient to state a claim.   *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556, 2020 WL 6821013, at *6 (C.D. Cal. Oct. 29, 2020) (noting

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

that courts dismiss trade dress claims for failing to provide a complete list of elements where the list of alleged trade dress elements is preceded by a non-limiting qualifier); *Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-cv-4456, 2017 WL 4271133, at \*4 (C.D. Cal. Sept. 25, 2017) (dismissing trade dress claim for using phrase "may include"); *Sleep Sci. Partners*, 2010 WL 1881770, at \*3 (dismissing trade dress claim for using phrase "including, but not limited to").

Without a more particularized description in the Complaint of **what specifically** lululemon considers unique to the lululemon brand and Align design, Peloton can only guess as to what constitutes lululemon's purported trade dress. As a result, lululemon's trade dress allegations must be dismissed.

## 2.    lululemon Fails To Allege Sufficiently That The Align Trade Dress Is Non-Functional

lululemon also fails to sufficiently allege **how** its products' trade dress is non-functional. *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769, 2015 WL 12731929, at \*4-5 (C.D. Cal. May 8, 2015) (dismissing trade dress claims where plaintiff failed to allege how its trade dress is non-functional). "A product feature is functional and cannot serve as a trademark if [the product feature] is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998) (internal quotations omitted). lululemon's Complaint does little more than recite the legal test for non-functionality, stating that the purported Align Trade Dress "is not functional," that lululemon's "right to use the Align Trade Dress will not put competitors at a significant non-reputation related disadvantage," and that the design features "are not comparatively simple or inexpensive to manufacture" and "do not affect the quality of the product." Compl. ¶¶ 33-35. The only explanation that lululemon **does**

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY

offer is that one need only look at other athletic pants referenced but not pictured in its Complaint to conclude "[t]here are numerous alternative shapes and designs for athleisure pants," and that competitors like Alo, Gaiam, Athleta, and Zella offer alternative pants. *Id.* This is not enough. "Plaintiff must support the elements of the claim 'with more than conclusory statements'—including, for example, 'how [its] trade dress is nonfunctional.'" *Mosaic Brands,* 2020 WL 5640233, at *5; *Deckers*, 2015 WL 12731929, at *4 (listing five bullet points of non-functional elements was insufficient); *Glassybaby, LLC v. Provide Gifts, Inc*., No. C11-380, 2011 WL 2218583, at *2 (W.D. Wash. June 6, 2011) (merely asserting that the hand-blow glass containers was distinctive does not show "how it is nonfunctional").

lululemon's attempt to plead non-functionality is also limited by its generic trade dress claim. lululemon's unclear and vague "allegations about the purely aesthetic qualities of its [Align pant] are not described in sufficient detail at the motion to dismiss stage to allow the Court to conclude [Peloton] copied any non-functional, purely aesthetic features of [the Align pant] in its [One Luxe legging]." *R & A Synergy*, 2019 WL 4390564, at *6. Additionally, "there is no unifying trade dress element to the wide variety of [Align pant] products offered," other than they are "tight athleisure pants having a waistband and stitching," thus "[e]xtending trade dress protection to the entirety of Plaintiff's product line would foreclose meaningful competition contrary to the intent of the Lanham Act." *Id.*

## B. lululemon's False Designation, Passing Off, and Unfair Competition Claims Should Be Dismissed

The Ninth Circuit has explained that state law claims of unfair competition under Cal. Bus. & Prof. Code § 17200 are "inextricably linked" to claims made under the Lanham Act. *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)). Accordingly, lululemon's failure to plead a claim under the Lanham Act necessitates

dismissal of its corresponding California state law claims.

lululemon's false designation, passing off, and unfair competition claims are premised in part on Peloton's alleged use of the purported Align Trade Dress. *See* Compl. ¶¶ 80-81, 90-92.   Where a plaintiff's unfair competition claims are "predicated on Defendant's alleged infringement of [plaintiff's] trade dress," failure to adequately plead the underlying trade dress infringement claims requires dismissal of the unfair competition claim. *Benebone LLC v. Pet Qwerks, Inc.*, No. 20-cv-00850, 2020 WL 8732321, at *7 (C.D. Cal. Sept. 30, 2020) (dismissing unfair competition claims after finding that plaintiff had not adequately pleaded its trade dress infringement claims); *see also Sugarfina*, 2017 WL 427113, at *6 (same). Thus, as detailed above in Section V.A, lululemon's failure to adequately plead its trade dress infringement claim is fatal to its allegations under the Lanham Act and Cal. Bus. & Prof. Code § 17200.

lululemon also alleges that Peloton's sale of the co-branded One Lux Tight (Nike), Strappy Bra (WITH), and High Neck Bra (WITH), and Peloton Apparel's Cadent Laser Dot Legging, Cadent Laser Dot Bra, and Cadent Peak Bra (collectively, "Accused Products") on Peloton's website and in retail stores constitute unfair competition via false designation of origin (*i.e.*, "passing off"). Compl. ¶¶ 82-83, 90-92.  But lululemon fails to plead facts supporting its claim.

"Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).  Here, lululemon's Complaint is devoid of any allegation suggesting that Peloton has in any way "passed off" the Accused Products as lululemon's products. *See* Compl. ¶¶ 82-83, 90-92; *see also R & A Synergy*, 2019 WL 4390564, at *14.  And the Complaint itself shows that each of the Accused Products prominently bears Peloton's branding, ***not*** lululemon's. *See* Compl. ¶¶ 37, 46, 49, 52, 55, 58.  Simply asserting that the Accused Products are similar to

1  lululemon's products is insufficient to state a claim under the Act. *R & A Synergy*,

2  2019 WL 4390564, at *14. Rather, lululemon must allege facts showing that Peloton

3  "sold [lululemon] products relabeled as [Peloton] products" without consent or that

4  Peloton "manufactured its own [products] and sold them purporting to be authentic

5  [lululemon] products." *Id.* lululemon cannot allege such facts. The facts in this

6  case echo those of *R & A Synergy*, where the court dismissed the plaintiff's false

7  designation claims because the Complaint alleged only that Spanx's products were

8  "nearly identical" to plaintiff's products and admitted that Spanx manufactured its

9  own products and marketed them under the Spanx brand name. *Id.*

10  lululemon also does not allege that it manufactured the Accused Products and

11  that Peloton has been trying to pass off lululemon products as Peloton products (*i.e.*,

12  reverse passing off). There can be no confusion regarding the source of the Accused

13  Products, particularly where Peloton has sold (and continues to sell) co-branded

14  apparel from any number of other collaborators on its website and in retail stores.

15  "Simply put, Plaintiff's allegations do not constitute passing off or reverse passing

16  off necessary to support a claim for false designation of origin." *R & A Synergy*,

17  2019 WL 4390564, at *14.

18  **VI.   CONCLUSION**

19  Peloton respectfully requests that the Court stay the case until the Southern

20  District of New York decides which case should proceed. In the alternative, this

21  court should dismiss this Action in its entirety or transfer it to the Southern District

22  of New York. And if the Court still proceeds, it should dismiss lululemon's claims

23  of trade dress infringement and false designation, passing off, and unfair competition

24  under 15 U.S.C. § 1125(a) and Cal. Bus. & Prof. Code § 17200 *et seq.* for failure to

25  state a claim under Fed. R. Civ. P. 12(b)(6).

26

27

28

1

2    Date:  January 26, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ Steven N. Feldman*
LATHAM & WATKINS LLP
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Phone: (212) 906-1200
Fax: (212) 751-4864

Matthew Walch (*pro hac vice*
forthcoming)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Phone: (312) 876-7700
Fax: (312) 993-9767

Robert J. Ellison (SBN 274374)
robert.ellison@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Phone: (424) 653-5500
Fax: (424) 653-5501

Rebekah L. Soule (*pro hac vice*
forthcoming)
rebekah.soule@lw.com
555 Eleventh St. NW, Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Defendant Peloton
Interactive, Inc.*

MEMORANDUM I/S/O PELOTON'S
MOTION TO DISMISS, TRANSFER, OR STAY