Craig S. Summers (SBN 108,688)
craig.summers@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Susan M. Natland (SBN 198,100)
susan.natland@knobbe.com
Brandon G. Smith (SBN 307,676)
brandon.smith@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
lululemon athletica canada inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:21-cv-09252-RGK-SHK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY**<br><br>Hearing<br>Date:    February 28, 2022<br>Time:    9:00 a.m.<br>Ctrm:    850<br>Judge:   Hon. R. Gary Klausner |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ................................................................................3

III.  THIS COURT SHOULD DENY PELOTON'S MOTION TO DISMISS ..........................................................................................5

    A.    The Federal Courts Strongly Disfavor Anticipatory Declaratory Judgment Actions Because They Are Contrary To Public Policy ......................................................5

    B.    Peloton's Declaratory Judgment Action Was Anticipatory ................................................................................9

    C.    The Balance Of Conveniences Does Not Warrant Rewarding Peloton For Filing An Anticipatory Declaratory Judgment Action ..................................................13

        1.    lululemon's Choice Of Forum Is Entitled To Great Weight ...............................................................................14

        2.    The Location Of The Relevant Agreements Is Neutral ................................................................................14

        3.    The Courts' Familiarity With The Law Is Neutral ........15

        4.    The Parties' Contacts With This Forum Weigh Against A Transfer ..........................................................15

        5.    The Parties' Contacts With This Forum Relating To lululemon's Claims Also Weigh Against A Transfer ................................................................................16

        6.    There Are No Substantial Differences In The Cost Of Litigating In The Two Forums .................................17

        7.    The Location Of Non-Party Witnesses Favors This Forum ...............................................................................17

        8.    Access To Sources Of Proof Is Entitled To Little Weight ...............................................................................18

IV.   THIS COURT SHOULD DENY PELOTON'S MOTION TO TRANSFER ........................................................................................19

V.    PELOTON'S RULE 12(B)(6) MOTION IS MOOT .........................19

VI.   CONCLUSION ................................................................................19

# TABLE OF AUTHORITIES

Page No(s).

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
    11 F. Supp. 2d 729 (S.D.N.Y. 1998) ........................................................13

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*,
    2006 WL 4117032 (S.D. Cal. Nov. 21, 2006) ....................................9, 11

*CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*,
    259 F.R.D. 398 (D. Minn. 2009) ..............................................................13

*Chapman v. Taylor, Bean & Whitaker*,
    2012 WL 12895704 (C.D. Cal. Nov. 29, 2012) .....................................19

*Charles Schwab & Co., Inc. v. Duffy*,
    1998 WL 879659 (N.D. Cal. Dec. 8, 1998) ..........................................8, 9

*Communications Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020) ...........................................................5, 6

*Creative Nail Design, Inc. v. Mycone Dental Supply Co., Inc.*,
    2012 WL 2106212 (S.D. Cal. June 11, 2012) ..........................................9

*Danzig v. Caiafa*,
    2014 WL 12601327 (C.D. Cal. Aug. 6, 2014) ........................................14

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ..................................................................14

*Florens Container v. Cho Yang Shipping*,
    245 F. Supp. 2d 1086 (N.D. Cal. 2002) .................................................18

*Green Planet Inc. v. Int'l IP Holdings LLC*,
    2013 WL 12146119 (C.D. Cal. Nov. 25, 2013) .....................................11

*Int'l Med. Devices, Inc. v. Cornell*,
    2021 WL 3415217 (C.D. Cal. June 15, 2021) ........................................14

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .............................................................*passim*

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
    2009 WL 2049702 (C.D. Cal. July 9, 2009) .......................................8, 10

*Kosta Int'l v. Brice Mfg. Co. Inc.*,
    2015 WL 13306131 (C.D. Cal. Mar. 9, 2015) ........................................18

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ..................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
*(cont'd)*

Page No(s).

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ...................................................................14

*Robles v. Gojo Indus., Inc.*,
   2021 WL 6103364 (C.D. Cal. Aug. 26, 2021) ..........................14

*Rollenhagen v. Int'l Speedway Corp.*,
   2008 WL 11509172 (W.D. Mich. Jan. 22, 2008)......................13

*Thomas Properties Group, Inc. v. Strategic Advisory Inc.*,
   2012 WL 12952056 (C.D. Cal. Oct. 19, 2012) ...........................9

*Trim-Lok Inc. v. Lifetime Industries Inc.*,
   2013 WL 12124283 (C.D. Cal. Nov. 6, 2013) ..........................11

*VLSI Tech. LLC v. Intel Corp.*,
   2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ............................17

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................18

*Xoxide, Inc. v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006)............................7, 8, 10

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) .........................................9, 11

**OTHER AUTHORITIES**

28 U.S.C. § 1404 ..................................................................14, 19

15 Wright, Miller, Cooper and Freer, *Federal Practice &
Procedure* § 3853 (4th ed. 2013)..............................................18

# I.  **INTRODUCTION**

If the Court chooses to address the merits of Peloton's motion to dismiss or transfer, this Court should deny Peloton's motion on the merits.[1]  Peloton's declaratory judgment claims in New York are a textbook example of anticipatory claims filed under imminent threat of litigation to manipulate venue, to which no deference is due.

lululemon's outside counsel sent a cease-and-desist letter to Peloton, warning Peloton that lululemon would sue Peloton for patent and trade dress infringement if Peloton did not cease its infringement by November 19, 2021.  Peloton's counsel responded that it was reviewing lululemon's allegations, but needed until November 24 to provide a substantive response.  lululemon granted this request for additional time "as a matter of professional courtesy."  Peloton responded to this courtesy, not with a responsive letter, but with an anticipatory declaratory judgment action in New York, filed under lululemon's express threat of suit.  Peloton's representation that it was reviewing lululemon's allegations and needed more time to respond were plainly misleading, creating a clear impression that Peloton would provide lululemon with a written response by the negotiated deadline.  Peloton's misleading request for additional time and precipitous action served only one purpose – to deprive lululemon of its choice of forum in which to enforce its rights.

/ / /

---

[1] lululemon and Peloton agree that this Court should not rule on Peloton's motion to dismiss or transfer this case.  Instead, this Court should defer to the court in the Southern District of New York, which is considering a fully briefed motion to dismiss Peloton's declaratory judgment claims in that court.  Peloton's declaratory judgment claims are the mirror image of lululemon's infringement claims in this Court, and the pending motions in the two courts raise precisely the same issue regarding which of these two cases should proceed on the merits.  No reason exists for both courts to address the same issue and potentially reach inconsistent results.

Federal courts, including both the Federal Circuit and courts within the Ninth Circuit, uniformly condemn this sort of conduct and recognize anticipatory declaratory judgment actions as an exception to the first-to-file rule. If permitted, this conduct would discourage potential plaintiffs from communicating with potential defendants in an effort to reach out-of-court resolutions of their disputes. Potential plaintiffs would be forced to file suit whenever they believed they had a claim, or risk having their case decided in the forum the potential defendant perceives to be most favorable to it. Worse still, potential defendants would be encouraged to engage in misleading conduct, like feigning an interest in out-of-court discussions, in order to manipulate venue. Courts in this district and elsewhere uniformly reject this type of gamesmanship.

Peloton has asked this Court and the New York court to ignore its misleading conduct because, in its view, the New York court is a more convenient forum than this Court. But the convenience of the parties matters little when both parties are major corporations who can litigate in any U.S. forum with little difficulty. Moreover, there are very strong connections between this case and California. lululemon's Los Angeles office is effectively its U.S. headquarters for product and branding, where lululemon makes most of its major product development and branding decisions. Members of lululemon's strategic leadership team work out of the Los Angeles office. And Peloton's representatives twice visited lululemon's Los Angeles office to view product samples. In addition, the inventor of one of lululemon's patents, who is no longer employed by lululemon, resides in California. Inventors are key witnesses in any patent case, and this inventor will be subject to a trial subpoena only in California. The remaining inventors all reside in the area of Vancouver, British Columbia, which is much closer to this Court than to the Southern District of New York. Thus, Peloton's arguments about convenience are weak at best. In addition, California has a strong interest in resolving this dispute

because Peloton has more than twice as many retail locations in California than in New York; and Peloton's retail locations are where the infringement occurs.

Accordingly, this Court should exercise its discretion and deny Peloton's motion to dismiss or transfer, particularly in light of the anticipatory nature of Peloton's declaratory judgment action, and Peloton's misleading pre-litigation correspondence.

## II.  BACKGROUND

lululemon is the world's leading provider of yoga and fitness apparel. Dkt. 1, ¶ 1.  Peloton is also a major player in the fitness industry, perhaps best known for its Peloton-branded exercise bicycles.  Dkt. 18-1 at 3.  In 2016, lululemon and Peloton entered into a co-branding agreement.  Declaration of Ali S. Razai ("Razai Decl."), Ex. 3,¶ 16.  Under that agreement, lululemon supplied Peloton with some of lululemon's most innovative and popular athletic apparel. Peloton then applied its own trademarks to the apparel, alongside lululemon's famous logo, and re-sold the co-branded apparel to the public.  Dkt. 1, ¶ 3.

In 2021, Peloton ended the co-branding agreement, and lululemon stopped supplying Peloton with authentic lululemon merchandise.  Dkt. 18-1 at 4:21.  After the shipments from lululemon stopped, Peloton began selling copies of the same lululemon products it had been selling under the co-branding agreement.  Dkt. 1, ¶ 4.  These copies include Peloton's Strappy Bra, Cadent Laser Dot Legging, Cadent Laser Dot Bra, High Neck Bra, and Cadent Peak Bra, which collectively infringe six of lululemon's design patents, and the One Lux Tight, which infringes lululemon's "Align" trade dress.[2]  *Id.*

/ / /

---

[2] Peloton asserts that it actually began selling its copies of lululemon's apparel before Peloton terminated the co-branding agreement.  Regardless of the timing of Peloton's sales, the issue in this case is the legality of Peloton's sales of its copies.

On November 11, 2021, shortly after learning of Peloton's conduct, lululemon sent a cease-and-desist letter to Peloton, explaining Peloton's patent and trade dress infringement in detail. Razai Decl., Ex. 1.  The letter demanded "that Peloton immediately stop infringing the lululemon Patents and the Align Trade Dress." *Id.* at 4.  The letter demanded a response by November 19, 2021, confirming that Peloton would cease its infringement.  *Id.*  "[O]therwise," the letter explained, "***lululemon will file a Complaint for patent and trade dress infringement … in federal court***." *Id.* (emphasis added)

Peloton responded through counsel by email on November 15, 2021. Razai Decl., Ex. 2 at 7.  In that email, Peloton's counsel represented that:

> We are beginning our ***review of the issues*** and will ***respond*** in due course.  I cannot guarantee that will be by your November 19 deadline.  If that presents an issue, let me know.  In the meantime, if I could ask that you email me a color copy of the letter you sent to Peloton, that would be helpful.  The version we have is in black and white.  [¶]  Happy to discuss this matter as well if there are additional things you think we should be aware of.

*Id.* (emphasis added).   lululemon immediately responded, stating that it understood from Peloton's email "that Peloton may not be able to substantively respond to my letter by the November 19 deadline." *Id.*  "As a matter of professional courtesy," lululemon continued, "we are happy to consider extending the deadline for response." *Id.* (emphasis added).  lululemon asked only that Peloton provide a firm date for its response. *Id.*  Peloton then requested until November 24 to respond. *Id. at 6.* lululemon agreed to this request, again communicating that it was expecting a response to its letter by the new deadline: "Per your request, lululemon agrees to extend the deadline for Peloton's response to November 24.  We look forward to hearing from you." *Id.*  Thus, Peloton had no doubt that lululemon was expecting a "response" to its

letter by November 24, and Peloton did nothing to dissuade lululemon from this well-founded belief.

Peloton, however, did not provide the response it had indicated would be forthcoming.  Instead, Peloton used the extra time, granted by lululemon as a professional courtesy, to prepare a Complaint for declaratory judgment and then race to the Southern District of New York, its home forum, to preempt lululemon from filing a Complaint in its choice of forum.  Peloton filed its Complaint in New York on the November 24 deadline it had requested – the day before the Thanksgiving holiday.   lululemon responded by filing its own Complaint for patent and trade dress infringement in this Court on Monday November 29, 2021, the first business day after the Thanksgiving weekend. Dkt. 1.  There is a complete identity of claims between the California Action and Peloton's anticipatory declaratory judgment action.  *Compare* Dkt. 1, *with* Razai Decl. Ex. 3 (New York Declaratory Judgment Complaint).

Peloton has now moved to dismiss or transfer the present action in favor of its anticipatory declaratory judgment action in New York.  If this Court chooses to address the motion on the merits at all, it should deny Peloton's motion.

### III.  THIS COURT SHOULD DENY PELOTON'S MOTION TO DISMISS

### A.   The Federal Courts Strongly Disfavor Anticipatory Declaratory Judgment Actions Because They Are Contrary To Public Policy

Peloton bases its motion to dismiss upon the first-to-file rule, relying upon its filing of its declaratory judgment action in New York two business days before lululemon filed the present infringement action.  However, as the Federal Circuit has explained, "trial courts have discretion to make exceptions to [the first-to-file] rule in the interest of justice or expediency, and we have recognized that such exceptions are not rare."  *Communications Test Design,*

*Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020).  A party's intention to preempt another's infringement suit is a critical factor in dismissing a first-filed declaratory judgment action in favor of an affirmative action filed by the true plaintiff.  *Id*.  Moreover, "[w]hen one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions."  *Id*.

Applying these factors in *Communications Test Design*, the Federal Circuit affirmed the district court's dismissal of a first-filed declaratory judgment action.  *Id.* at 1365.  There, the patentee sent a letter to a potential infringer stating that the patentee has "a good faith basis to believe" there was infringement and asking the potential infringer "whether it was willing to discuss potential terms for a patent license agreement."  *Id.* at 1359.  The letter warned that if the patentee did not receive the requested confirmation, it would sue for patent infringement.  *Id*.  While license negotiations were ongoing between the parties' executives, the potential infringer filed suit for a declaratory judgment.  *Id*.  The patentee then filed its own separate action for patent infringement in a different forum and moved to dismiss the declaratory judgment complaint.  *Id*. at 1360.

The district court dismissed the declaratory judgment action and the Federal Circuit affirmed.  In particular, the Federal Circuit affirmed the district court's findings that the plaintiff "filed its declaratory judgment complaint in anticipation of [the patentee's] patent infringement complaint," that the plaintiff's declaratory judgment suit "interfered with ongoing negotiations between the parties and did not serve the objectives of the Declaratory Judgment Act," and, on balance, the patentee's chosen forum was "a more convenient forum."  *Id.* at 1363.  Both the Federal Circuit and the district court specifically

noted that the declaratory judgment plaintiff "did not have the right to string [the patentee] along just long enough to get the judicial drop and file this lawsuit in its own backyard." *Id.* at 1360, 1364.

The courts in this district and throughout California likewise have routinely dismissed first-filed declaratory judgment actions that were filed under threat of litigation.  For example, in *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1190 (C.D. Cal. 2006), Ford sent a cease-and-desist letter to Xoxide demanding that Xoxide stop four different forms of infringement of trademarks related to the Mustang automobile.  Ford enclosed a proposed settlement agreement and demanded that Xoxide sign the agreement as is or the matter would be resolved "through litigation." *Id.*  Xoxide then sent a letter to Ford agreeing to stop one of its forms of infringement, but insisting that its other three activities were lawful. *Id.*  Ford then sent a second letter, again demanding that Xoxide sign the proposed agreement as is or else Ford would "seek a judicial resolution of this matter." *Id.* at 1191.  Xoxide then responded by agreeing to stop a second form of infringement and requesting "2 to 3 business days to complete its consideration and response regarding" the remaining two activities. *Id.*  However, rather than responding within the time requested, Xoxide filed suit for declaratory relief in this district. *Id.*

The court dismissed the action as an improper anticipatory suit. *Id.* at 1192-93.  The court explained that it "may, in its discretion, rely on equitable grounds such as when the filing of the first suit evidences bad faith, ***anticipatory suit, or forum shopping***, to determine whether to depart from the first to file rule." *Id.* at 1192 (emphasis in original).  "Anticipatory suits are found when the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent, and are viewed with disfavor as examples of forum shopping and gamesmanship." *Id.*  The court found that Ford's letters established that suit was imminent, and "Xoxide cannot

credibly argue otherwise." *Id.* at 1193.  Xoxide's request for a short extension of time to respond, followed by filing its declaratory judgment action, was clear gamesmanship. *Id.*

Similarly, in *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, 2009 WL 2049702, at *1 (C.D. Cal. July 9, 2009), Puma sent K-Swiss a cease-and-desist letter on March 2, charging K-Swiss with trademark infringement and giving K-Swiss until April 30 to cease its conduct.  Otherwise, Puma's letter stated, it would be "compelled to seek for [sic] a legal solution of this issue by enforcing our rights in our full discretion by all available legal measures." *Id.*  On the April 30 due date, K-Swiss filed "a preemptive declaratory judgment action." *Id.*  Two business days later, Puma filed an infringement action in Massachusetts. *Id.*

The court dismissed the first-filed declaratory action in favor of the second-filed Massachusetts infringement action. *Id.* at *3.  "[W]hen, as here, a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action brought by the true plaintiff in the dispute to proceed to judgment rather than the first." *Id.*  "There is very little doubt that this case was filed in anticipation of the Defendants' contemplated infringement action." *Id.*  As the court explained, this was evident because "[o]n April 30, 2009, while PUMA AG was awaiting a response, K-Swiss filed this declaratory judgment action." *Id.*  In addition, the court explained that the first-to-file rule is "diminished" and "of limited value" where, as in the present case, the parties' respective complaints were filed only two business days apart. *Id.* at *2.

The court reached the same conclusion in *Charles Schwab & Co., Inc. v. Duffy*, 1998 WL 879659 (N.D. Cal. Dec. 8, 1998).  There, again, the court departed from the first-to-file rule because the declaratory judgment suit was anticipatory. *Id.* at *1.  The court reasoned that "[a]pplying the first-to-file rule

would thwart settlement negotiations, as intellectual property holders would feel compelled to file suit rather than communicate with an alleged infringer." *Id.* In addition, "permitting this case to continue would reward a race to the courthouse." *Id.*

Numerous other California district court cases are in accord. *See*, *e.g.*, *Thomas Properties Group, Inc. v. Strategic Advisory Inc.*, 2012 WL 12952056, at *6-*7 (C.D. Cal. Oct. 19, 2012) (declaratory judgment suit was anticipatory when filed during one-week extension of time granted to respond to cease-and-desist letter); *Creative Nail Design, Inc. v. Mycone Dental Supply Co., Inc.*, 2012 WL 2106212, at *2-*3 (S.D. Cal. June 11, 2012) (declaratory judgment suit in patent case was dismissed as anticipatory); *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2006 WL 4117032, at *3 (S.D. Cal. Nov. 21, 2006) (refusing to defer to first-filed declaratory judgment action that was filed during an agreed-upon extension of time to respond to a cease-and-desist letter); *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 666 (N.D. Cal. 2003) (declaratory judgment suit was anticipatory when filed one day before agreed-upon final deadline to respond to cease-and-desist letter).

**B.    Peloton's Declaratory Judgment Action Was Anticipatory**

Peloton's declaratory judgment action in New York was plainly anticipatory.  As discussed above, Peloton responded to lululemon's cease-and-desist letter by representing to lululemon that it was reviewing the issues raised in the letter but might not be able to provide a substantive response by the stated November 19 deadline Razai Decl. Ex. 2 at 7.  Peloton then requested until November 24 to respond, *id.* at 6, and lululemon agreed "as a matter of professional courtesy." *Id.* at ECF 6-7.  Peloton then used that extension of time to prepare and file its declaratory judgment complaint on the agreed-upon November 24 deadline.  Razai Decl., Ex. 3.

/ / /

These documented, undisputed facts speak for themselves and plainly establish the anticipatory nature of Peloton's complaint. Peloton nevertheless raises several arguments in an effort to establish that its complaint was not anticipatory. These arguments have no merit.

First, Peloton argues that lululemon's cease-and-desist letter contained only a "general threat" of litigation because it did not specify the date or location of the threatened infringement suit. According to Peloton, declaratory judgment suits filed in response to such a "general threat" of litigation are not anticipatory. *See* Dkt. 18-1 at 5:17-21, 9:23-26, 10:3-4. This argument has no basis in fact or law. lululemon's letter demanded that Peloton "confirm by **November 19, 2021**, that you will fully comply with lululemon's requests herein, **otherwise lululemon will file a Complaint for patent and trade dress infringement … in federal court**." Razai Decl. Ex. 1 at 4 (second emphasis added). This left no doubt that suit was imminent. It was a "specific, concrete indication[] that a suit by defendant was imminent." *Xoxide*, 448 F. Supp. 2d at 1192.

Moreover, nearly identical language, and often softer language, repeatedly and routinely has been found to be a sufficiently firm threat of litigation to trigger the anticipatory suit rule. In particular, the following language has been found sufficient:

- comply with demands by February 9, 2006, or the matter will be resolved "through litigation wherein Ford will seek all available remedies against you." *Id.* at 1190.

- cease infringement by March 2, 2009, or the intellectual property owner would be "compelled to seek for [sic] a legal solution of this issue by enforcing our rights in our full discretion by all available legal measures." *K-Swiss*, 2009 WL 2049702, at * 1.

/ / /

-10-

- "Bell'O is willing to take all steps necessary to fully protect its intellectual properties, including commencing an action in an appropriate United States District Court if Z-Line does not comply with our aforementioned request." *Z-Line*, 218 F.R.D. at 666.

- "if we do not hear from you by the close of business next Friday, August 18, 2006 that you will comply with our demands, we have been instructed to file suit against [Defendant] for copyright infringement, trade dress infringement, false designation of origin and unfair competition and to seek compensatory and punitive damages, injunctive relief and all other remedies afforded by law." *Brighton*, 2006 WL 4117032, at *1.

- "if you share our client's desire to avoid litigation, please contact me within fourteen (14) days to confirm your intention to comply with these conditions." *Green Planet Inc. v. Int'l IP Holdings LLC*, 2013 WL 12146119, at *4 (C.D. Cal. Nov. 25, 2013); *see also id.* at *1.

- "unless we hear from you by August 1, 2013, [Defendant] will file suit in federal district court." *Trim-Lok Inc. v. Lifetime Industries Inc.*, 2013 WL 12124283, at *1 (C.D. Cal. Nov. 6, 2013).

The cease-and-desist letters in these cases specified neither the date nor venue for the planned affirmative suit. Yet, in each case, the declaratory judgment action filed in response to the cease-and-desist letter was held to be anticipatory.

Next, Peloton argues that its conduct was not misleading because its emails to lululemon did not indicate "how it would respond to lululemon's demands." Dkt. 18-1 at 5:26-27; *see also id.* at 10:15-16. However, the parties' correspondence speaks for itself. Peloton stated it was beginning its "review of the issues," it "will respond in due course," it requested five extra days to respond, and it expressly invited further discussions. Razai Decl. Ex. 2 at 6-7. Any reasonable person reviewing this correspondence in good faith would

conclude that Peloton was requesting more time so that it could consider lululemon's demands and write back to lululemon.  No one would construe the correspondence as seeking an extension of time to prepare a declaratory judgment suit.  In any event, there is no authority suggesting that misleading behavior is a prerequisite to a finding of an anticipatory suit.  It is certainly an aggravating factor favoring dismissal, but it is not a requirement.

Peloton next argues that it filed its declaratory judgment suit merely to "obtain legal certainty," and to avoid any delay in the resolution of its rights, not to preempt lululemon's imminent suit.  Dkt. 18-1 at 1:7, 2:16-23, However, Peloton had no legitimate concerns about delay and uncertainty here.  lululemon gave Peloton a firm deadline of November 19, 2021 to respond to lululemon's letter.  Razai Decl. Ex. 1.  Otherwise, lululemon explained, it "will file a Complaint for patent and trade dress infringement … in federal court."  *Id.* lululemon's letter provided absolute certainty that absent a resolution of the matter by the deadline, lululemon would file suit.  Moreover, contrary to Peloton's assertion, lululemon's letter posed no "risk to Peloton's reputation and business relationships."  Dkt. 18-1 at 6:6.  lululemon did not publicize its cease-and-desist letter in any way, and thus it posed no harm to Peloton's reputation or business relationships.

Finally, Peloton denies that it engaged in a race to the courthouse because it assumed lululemon would file its infringement claims in New York anyhow.  *Id.* at 10:19-22, 10:27-11:1.  However, Peloton's own conduct betrays its claim. If Peloton was not concerned with gaining a perceived venue advantage, then it had no reason to mislead lululemon into believing it would receive a substantive response to its letter by November 24.  Peloton could have candidly informed lululemon that it had no interest in any out-of-court discussions and that it was planning to file a declaratory judgment action in New York to resolve this matter.  Of course, Peloton also could have responded in good faith to

lululemon's letter, and potentially avoided litigation.  Instead, Peloton used the extra time it requested to surreptitiously prepare a declaratory judgment complaint and file it in Peloton's choice of forum on the evening of November 24, the day before the Thanksgiving holiday.

## C.   The Balance Of Conveniences Does Not Warrant Rewarding Peloton For Filing An Anticipatory Declaratory Judgment Action

Peloton argues that even if its declaratory judgment action is anticipatory, the balance of conveniences still warrants dismissal of this case under the first-to-file rule.  Dkt. 18-1 at 11:2-6.  However, Peloton overlooks the obvious fact that both parties are enormous, publicly-traded companies, each having annual revenues exceeding $4 billion.  Razai Decl. ¶ 8.  For two companies of this size, each having a nationwide presence, litigation in any specific venue in the United States is not particularly convenient or inconvenient.  *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) (the convenience of the parties "is less weighty when, as here, the suit is between two large corporations that regularly conduct business on a national or international basis"); *CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*, 259 F.R.D. 398, 409-10 (D. Minn. 2009) (convenience of the parties is insignificant where they are "large corporations that have the financial wherewithal to bear the expense of litigating this action in either forum"); *Rollenhagen v. Int'l Speedway Corp.*, 2008 WL 11509172, at *2 (W.D. Mich. Jan. 22, 2008) (convenience of "large corporations" is "entitled to little weight").   In any event, as lululemon will now explain, the balance of convenience factors weigh in favor of keeping this case in this Court.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing eight relevant factors).

/ / /

/ / /

### 1.   lululemon's Choice Of Forum Is Entitled To Great Weight

"[G]reat weight is generally accorded plaintiff's choice of forum." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Thus, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  *See also Robles v. Gojo Indus., Inc.*, 2021 WL 6103364, at *3 (C.D. Cal. Aug. 26, 2021); *Int'l Med. Devices, Inc. v. Cornell*, 2021 WL 3415217, at *2 (C.D. Cal. June 15, 2021); *Danzig v. Caiafa*, 2014 WL 12601327, at *5 (C.D. Cal. Aug. 6, 2014) (Klausner, J.).  Accordingly, this factor weighs heavily in favor of keeping this action in this Court.[3]

### 2.   The Location Of The Relevant Agreements Is Neutral

Another factor considered is the location where the relevant agreements were negotiated and executed.  *Jones*, 211 F.3d at 498.  This, however, is a patent and trade dress infringement case.  There are no agreements relevant to the parties' claims.  While the parties once entered into a co-branding agreement, neither party alleges breach of that agreement here or in New York.  Because no breach is alleged, the individuals who negotiated and executed that agreement have little relevance to this case.  The fact that lululemon informed the New York court by way of background that the parties once had a co-branding agreement does not change this fact.  *See* Dkt. 18-1 at 11-12.

/ / /

---

[3] Peloton's citation to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981), is off point.  *Piper* involved a motion to dismiss in favor of a foreign forum under the doctrine of *forum non conveniens*, not a motion to dismiss or transfer one of two domestic cases.  In that unique context, the Court held that a foreign plaintiff's choice of a U.S. forum is entitled to less weight.  *Id.*  *Piper* says nothing about the weight to be given to a plaintiff's choice of forum on either a motion to dismiss under the first-to-file rule or a motion to transfer under 28 U.S.C. § 1404.

### 3.    The Courts' Familiarity With The Law Is Neutral

This is a patent and trade dress infringement case.  lululemon agrees with Peloton that this Court and the New York court are equally equipped to handle these federal claims.  Dkt. 18-1 at 12:7-11.  Thus, this factor is neutral.

### 4.    The Parties' Contacts With This Forum Weigh Against A Transfer

The next factor considered is "the respective parties' contacts with the forum."  *Jones*, 211 F.3d at 498.   Though based in Vancouver, British Columbia, lululemon has extensive contacts with this forum.  lululemon maintains an office in Los Angeles which functions as lululemon's U.S. headquarters and where lululemon makes most of its major company decisions relating to product launch and product branding.  Razai Decl. Ex. 5 ("Fallon Decl.") ¶ 4.  lululemon's Chief Product Officer, Sun Choe, resides in Los Angeles and works out of this office.  *Id*.  In addition, Ashlee Fallon, lululemon's Key Accounts Manager, is based in Los Angeles.  *Id*. ¶ 3.  She attended two key meetings in Los Angeles with Peloton at which Peloton selected the clothing that it first would market with lululemon, and later would copy in violation of lululemon's patent and trade dress rights.  *Id*. ¶ 7.  The selection of Los Angeles for these two meetings was no coincidence.  lululemon's Los Angeles facility is the only location in the United States where lululemon maintains samples of all of its products and is where prototypes of products are sent for lululemon's review.  *Id*. ¶¶ 5-6.

In addition, California, not New York, is the center of Peloton's infringing activities.  Peloton maintains 13 showrooms in California, its greatest number in any state, compared to only 6 showrooms in New York.  Razai Decl. ¶ 7.  And Peloton maintains 7 showrooms within the Central District of California, with only 3 within the Southern District of New York.  *Id*. lululemon similarly focuses on the California market.  Over ■■ of its U.S.

1    sales are in California, compared to only about ███ in New York.  Fallon Decl.

2    ¶ 8.  Similarly, 17% of lululemon's retail stores are located in California, and

3    just 6% are located in New York.[4]  *Id.* ¶ 9.

4           Peloton nevertheless argues this factor favors a transfer because it is

5    based in New York, and lululemon does not maintain its worldwide

6    headquarters in this district.  Dkt. 18-1 at 12:16-19.  Peloton misunderstands this

7    factor.  This factor, by its plain language, considers both parties' contacts with

8    this forum, not the location of the headquarters of the two parties.  Peloton's

9    contacts with New York are simply irrelevant under this factor.

10          **5.      The Parties' Contacts With This Forum Relating To**

11                  **lululemon's Claims Also Weigh Against A Transfer**

12          The next factor is "the contacts relating to the plaintiff's cause of action

13   in the chosen forum."  *Jones*, 211 F.3d at 498.  As just discussed, more of

14   Peloton's in-store infringement occurs in California than in any other state.

15   Similarly, more of lululemon's sales occur in California than in any other state,

16   and these sales are relevant to damages issues in this case.

17          Peloton argues that "the parties' co-branding relationship was centered in

18   New York."  Dkt. 18-1 at 12:20-21.  However, as discussed above, this case

19   does not involve any claims for breach of the parties' co-branding agreement.  It

20   is a patent and trade dress infringement case.  Thus, the "center[]" of the parties'

21   co-branding relationship (whatever that means) is irrelevant to this motion.

22          Peloton also argues that lululemon's allegations of patent and trade dress

23   infringement "hinge on Peloton's decision to buy and sell the six Accused

24   Products."  *Id.* at 12:21-24.  Again, this is inaccurate.  lululemon's allegations of

---

[4]  Peloton argued in New York that most of its sales are online.
Nevertheless, it remains true that a plurality of its showrooms selling infringing
goods are located in California, representing significant contacts with the forum
state.

-16-

infringement are based upon Peloton's **sales** of the Accused Products and **offers to sell** those products "through Defendant's retail locations and/or on Defendant's website."  Dkt. 1 ¶ 45.  As discussed above, those retail locations are predominantly in California.

### 6. There Are No Substantial Differences In The Cost Of Litigating In The Two Forums

The next factor is "the differences in the costs of litigation in the two forums." *Jones*, 211 F.3d at 498-99.  This factor is neutral.  The Central District of California would be less costly for lululemon because it maintains its U.S. headquarters in Los Angeles and many of its witnesses are based in Los Angeles.  New York presumably would be less costly for Peloton, as it is based in that forum.  In any event, as discussed above, the convenience of the parties is entitled to little weight when both parties are substantial corporations with a nationwide presence.

### 7. The Location Of Non-Party Witnesses Favors This Forum

The next factor is "the availability of compulsory process to compel attendance of unwilling non-party witnesses." *Jones*, 211 F.3d at 499.  In patent cases, "inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience." *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019).  Here, the sole inventor of one of the patents-in-suit, Julia Breitwieser who invented U.S. Patent No. D923,914, resides in California.  Razai Decl. ¶ 5.  Ms. Breitwieser no longer works for lululemon and is a third-party over whom lululemon has no control.  She is, however, within the subpoena power of this Court under Fed. R. Civ. P. 45(c)(1)(B)(ii).

Against this, Peloton argues that unidentified witnesses affiliated with Nike and WITH have unidentified testimony to offer.  Dkt. 18-1 at 13:3-16 (citing Whistler Decl. ¶¶ 24-25).  Because Peloton has not identified these

alleged witnesses or described their testimony in any substantial way, these alleged witnesses are entitled to little weight. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) ("The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include."); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001) ("Defendants do not identify any specific witness. Absent a more specific showing that particular witnesses will be necessary at trial, the court cannot consider the convenience of these unnamed witnesses.").

### 8.   Access To Sources Of Proof Is Entitled To Little Weight

The final factor to be considered is "the ease of access to sources of proof." *Jones*, 211 F.3d at 499. "In assessing the ease of access to documentary proof, the key question is whether one party would experience hardship due to the location of documents if the case was not transferred." *Kosta Int'l v. Brice Mfg. Co. Inc.*, 2015 WL 13306131, at *4 (C.D. Cal. Mar. 9, 2015). "The moving party must establish the location of the documents in question, their importance to the resolution of the case, and the inability to move or copy them easily." *Id.*(quoting 15 Wright, Miller, Cooper and Freer, *Federal Practice & Procedure* § 3853 (4th ed. 2013)). "Modern technology – which enables the transmission of many documents over large distances in little time – often renders documents' physical locations unimportant." *Id.* That is precisely the case here. Peloton, a large corporation, has made no showing that it would suffer undue hardship from bringing its trial exhibits to trial in this district. As in *Kosta*, Peloton "did not identify any indicia of hardship peculiar to this case (such as an unusually large number of documents, an inability to produce documents electronically, etc." *Id.* Thus, this factor is given little or no weight. *Id.*

/ / /

In sum, all of the factors to be considered weigh in favor of this forum or are neutral. Certainly, Peloton has not made such a compelling showing of inconvenience that the anticipatory nature of its declaratory judgment action in New York should be ignored. Accordingly, Peloton's motion to dismiss under the first-to-file rule should be denied.

## IV.   THIS COURT SHOULD DENY PELOTON'S MOTION TO TRANSFER

Peloton argues in the alternative that this case should be transferred to the Southern District of New York under 28 U.S.C. § 1404. Dkt. 18-1 at 14:1-12. In support, Peloton relies upon the same balance-of-convenience factors discussed above. For the reasons just explained, Peloton's balance-of-convenience arguments have no merit. Accordingly, Peloton's motion to transfer should be denied.

## V.   PELOTON'S RULE 12(B)(6) MOTION IS MOOT

Peloton has also moved to dismiss lululemon's trade dress and unfair competition claims under Fed. R. Civ. P. 12(b)(6), arguing that lululemon has not sufficiently defined its trade dress in its Complaint and that lululemon has not sufficiently alleged non-functionality of its trade dress. Dkt. 18-1 at 14-20. While lululemon believes its original Complaint is sufficient, lululemon is filing concurrently with this opposition brief an Amended Complaint setting forth its claims in even greater detail. Peloton's Rule 12(b)(6) motion is therefore moot. *See Chapman v. Taylor, Bean & Whitaker*, 2012 WL 12895704, at *2 (C.D. Cal. Nov. 29, 2012).

## VI.   CONCLUSION

The parties agree that this Court should not decide Peloton's motion to dismiss or transfer and should instead defer to the New York court to decide which of the parties' two cases should take precedence. If, however, the Court chooses to address Peloton's motion to dismiss or transfer on the merits, it

1  should deny that motion.  Peloton's declaratory judgment suit in New York is an
2  anticipatory suit, filed by Peloton to manipulate venue, and it is the first-filed
3  lawsuit only because Peloton engaged in misleading conduct to ensure it would
4  win the race to the courthouse.  Peloton's conduct should not be encouraged,
5  this case should be given priority, and Peloton's motion should be denied.

6

7                              Respectfully submitted,

8                              KNOBBE, MARTENS, OLSON & BEAR, LLP

9

10  Dated:  February 7, 2022        /s/ Ali S. Razai
11                              Craig S. Summers
                              Ali S. Razai
12                              Susan M. Natland
                              Brandon G. Smith
13
                              Attorneys for Plaintiff
14                              lululemon athletica canada inc.
    55012930
15

16

17

18

19

20

21

22

23

24

25

26

27

28