Craig S. Summers (SBN 108,688)
craig.summers@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
Susan M. Natland (SBN 198,100)
susan.natland@knobbe.com
Brandon G. Smith (SBN 307,676)
brandon.smith@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
lululemon athletica canada inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:21-cv-09252-MEMF-SHKx<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY**<br><br>Hearing<br>Date:     March 24, 2022<br>Time:     10:00 a.m.<br>Ctrm:    8B<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ..................................................................................1

II. BACKGROUND .................................................................................3

III. MOTION TO DISMISS UNDER THE FIRST-TO-FILE RULE ...........4

    A.    Anticipatory Actions Are an Exception to the First-to-File Rule ....................................................................................4

    B.    Peloton's Declaratory Judgment Action Was Anticipatory ................................................................................8

    C.    The Balance Of Conveniences Does Not Warrant Rewarding Peloton For Filing An Anticipatory Declaratory Judgment Action ..................................................12

IV. PELOTON'S MOTION TO TRANSFER .............................................17

V. PELOTON'S MOTION TO DISMISS UNDER RULE 12(B)(6)...........17

    A.    Legal Standard Under Rule 12(b)(6) .........................................17

    B.    Pleading Standards For Trade Dress Infringement Claims ......18

    C.    lululemon Has Adequately Identified The Align Trade Dress........................................................................................19

    D.    lululemon Has Sufficiently Pled Non-Functionality ................22

    E.    False Designation Of Origin, Passing Off, And Unfair Competition................................................................................24

    F.    lululemon Should Be Granted Leave To Amend If Necessary ..................................................................................25

# TABLE OF AUTHORITIES

**Page No(s).**

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
    11 F. Supp. 2d 729 (S.D.N.Y. 1998) ............................................................. 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 17

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*,
    2006 WL 4117032 (S.D. Cal. Nov. 21, 2006) ......................................... 8, 10

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................... 18

*CBS Interactive Inc. v. Nat'l Football League Players Ass'n Inc.*,
    259 F.R.D. 398 (D. Minn. 2009) .................................................................. 13

*Charles Schwab & Co. v. Duffy*,
    1998 WL 879659 (N.D. Cal. Dec. 8, 1998) ............................................... 7, 8

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ................................................................ 18, 21

*Commc'ns Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020) ..................................................................... 5

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ........................................................................ 25

*Crafty Prods., Inc. v. Michaels Companies, Inc.*,
    389 F. Supp. 3d 876 (S.D. Cal. 2019) .......................................................... 21

*Creative Nail Design, Inc. v. Mycone Dental Supply Co.*,
    2012 WL 2106212 (S.D. Cal. June 11, 2012) ................................................ 8

*Danzig v. Caiafa*,
    2014 WL 12601327 (C.D. Cal. Aug. 6, 2014) ............................................. 13

1
2
3

**TABLE OF AUTHORITIES**
*(cont'd)*

Page No(s).

*Decker Coal Co. v. Commw. Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) .......................................................................... 13

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
   2015 WL 12731929 (C.D. Cal. May 8, 2015) ................................... 18, 20, 23

*Disc Golf Ass'n v. Champions Discs, Inc.*,
   158 F.3d 1002 (9th Cir. 1998) ....................................................................... 19

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................................... 23

*Faulkner v. ADT Sec. Servs., Inc.*,
   706 F.3d 1017 (9th Cir. 2013) ....................................................................... 17

*Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*,
   2019 WL 1260634 (C.D. Cal. Mar. 18, 2019) ......................................... 18, 19

*Florens Container v. Cho Yang Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) ......................................................... 16

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ......................................................................... 19

*Glassbaby, LLC v. Provide Gifts, Inc.*,
   2011 WL 2218583 (W.D. Wash June 6, 2011) .............................................. 23

*Green Planet Inc. v. Int'l IP Holdings LLC*,
   2013 WL 12146119 (C.D. Cal. Nov. 25, 2013) ............................................. 11

*Int'l Jensen v. Metrosound U.S.A, Inc.*,
   4 F.3d 819 (9th Cir. 1993) ............................................................................. 18

*Int'l Med. Devices, Inc. v. Cornell*,
   2021 WL 3415217 (C.D. Cal. June 15, 2021) ................................................ 13

*Intri Plex Techs., Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007) ....................................................................... 25

**TABLE OF AUTHORITIES**
*(cont'd)*

Page No(s).

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ........................................................ 13, 14, 15, 16

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
  2009 WL 2049702 (C.D. Cal. July 9, 2009) ............................................. 7, 10

*Kosta Int'l v. Brice Mfg. Co. Inc.*,
  2015 WL 13306131 (C.D. Cal. Mar. 9, 2015) ........................................ 16, 17

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ............................................................... 13

*Millenium Labs., Inc. v. Ameritox, Ltd.*,
  2012 WL 4863781 (S.D. Cal. Oct. 12, 2012) ........................................ 23, 24

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  2020 WL 6821013 (C.D. Cal. Oct. 29, 2020) ............................................. 23

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
  514 U.S. 159 (1995) ........................................................................... 19

*R and A Synergy LLC v. Spanx, Inc.*,
  2019 WL 4390564 (C.D. Cal. May 1, 2019) .......................................... 20, 25

*Robles v. Gojo Indus., Inc.*,
  2021 WL 6103364 (C.D. Cal. Aug. 26, 2021) ............................................. 13

*Rollenhagen v. Int'l Speedway Corp.*,
  2008 WL 11509172 (W.D. Mich. Jan. 22, 2008) ........................................ 13

*Sambonet Paderno Indus., S.P.A. v. Sur La Table, Inc.*,
  2015 WL 4498795 (C.D. Cal. July 23, 2015) ............................................. 25

*AMF Inc. v. Sleekcraft Boats*,
  599 F. 2d 341 (9th Cir. 1979) ............................................................... 21

*Sleep Sci. Partners v. Lieberman*,
  2010 WL 1881770 (N.D. Cal. May 10, 2010) ............................................. 18

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*Thomas Properties Grp., Inc. v. Strategic Advisory Inc.*
  2012 WL 12952056 (C.D. Cal. Oct. 19, 2012) ................................................. 9

*Toyo Tire & Rubber Co. v. CIA Wheel Group,*
  2016 WL 6138416 (C.D. Cal. May 6, 2016)................................................. 22

*Trim-Lok Inc. v. Lifetime Indus. Inc.,*
  2013 WL 12124283 (C.D. Cal. Nov. 6, 2013) ................................................. 11

*TSX Toys, Inc. v. 665, Inc.,*
  2015 WL 12791406 (C.D. Cal. Apr. 24, 2015)............................................. 19

*U.S. v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) ........................................................................ 18

*U.S. v. Webb,*
  655 F.2d 977 (9th Cir. 1981) ........................................................................ 25

*Virgin Scent, Inc. v. Bel Air Naturals Care Corp.,*
  2018 WL 5264145 (C.D. Cal. Feb. 8, 2018) ................................................. 18

*VLSI Tech. LLC v. Intel Corp.,*
  2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ............................................... 16

*Williams v. Bowman,*
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) ....................................................... 16

*Xoxide, Inc. v. Ford Motor Co.,*
  448 F. Supp. 2d 1188 (C.D. Cal. 2006)........................................... 6, 7, 10, 12

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*
  218 F.R.D. 663 (N.D. Cal. 2003) ............................................................. 9, 10


**OTHER AUTHORITIES**

15 U.S.C. § 1125 ............................................................................... 24, 25

28 U.S.C. § 1404 ...................................................................................... 17

Fed. R. Civ. P. 8......................................................................................... 17

1

## TABLE OF AUTHORITIES
### (*cont'd*)

2

3

**Page No(s).**

4

Fed. R. Civ. P. 12.............................................................................. 3, 17

5

Fed. R. Civ. P. 15.............................................................................. 18, 25

6

Fed. R. Civ. P. 45.............................................................................. 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. <u>INTRODUCTION</u>

If the Court chooses to address the merits of Peloton's motion to dismiss or transfer, this Court should deny Peloton's motion on the merits.[1]  Peloton's New York action was a textbook example of anticipatory claims filed under imminent threat of litigation to manipulate venue, to which no deference is due.

lululemon's outside counsel sent a cease-and-desist letter to Peloton, warning Peloton that lululemon would sue Peloton for patent and trade dress infringement if Peloton did not cease its infringement by November 19, 2021. Peloton's counsel responded that it was reviewing lululemon's allegations, but needed until November 24 to provide a substantive response.  lululemon granted this request for additional time "as a matter of professional courtesy."  Peloton responded to this courtesy, not with a responsive letter, but with an anticipatory declaratory judgment action in New York, filed under lululemon's express threat of suit.  Peloton's representation that it was reviewing lululemon's allegations and needed more time to respond were plainly misleading, creating a clear impression that Peloton would provide lululemon with a written response by the negotiated deadline.  Peloton's misleading request for additional time and precipitous action served only one purpose—to deprive lululemon of its choice of forum in which to enforce its rights.

Federal courts, including both the Federal Circuit and courts within the Ninth Circuit, uniformly condemn this sort of conduct and recognize anticipatory declaratory judgment actions as an exception to the first-to-file rule. If permitted, this conduct would discourage potential plaintiffs from communicating with potential defendants in an effort to reach out-of-court resolutions of their disputes.  Potential plaintiffs would be forced to file suit

---

[1] lululemon and Peloton agree that this Court should defer to the court in the Southern District of New York, which is considering a fully briefed motion to dismiss Peloton's declaratory judgment claims in that court.

-1-

whenever they believed they had a claim, or risk having their case decided in the forum the potential defendant perceives to be most favorable to it. Worse still, potential defendants would be encouraged to engage in misleading conduct, like feigning an interest in out-of-court discussions, in order to manipulate venue. Courts in this district and elsewhere uniformly reject this type of gamesmanship.

Peloton has asked this Court and the New York court to ignore its misleading conduct because, in its view, the New York court is a more convenient forum than this Court. But the convenience of the parties matters little when both parties are major corporations who can litigate in any U.S. forum with little difficulty. Moreover, there are very strong connections between this case and California. lululemon's Los Angeles office is effectively its U.S. headquarters for product and branding, where lululemon makes most of its major product development and branding decisions. Members of lululemon's strategic leadership team work out of the Los Angeles office. And Peloton's representatives twice visited lululemon's Los Angeles office to view product samples. In addition, the inventor of one of lululemon's patents, who is no longer employed by lululemon, resides in California. Inventors are key witnesses in any patent case, and this inventor will be subject to a trial subpoena only in California. The remaining inventors all reside in the area of Vancouver, British Columbia, which is much closer to this Court than to the Southern District of New York. Thus, Peloton's arguments about convenience are weak at best. In addition, California has a strong interest in resolving this dispute because Peloton has more than twice as many retail locations in California than in New York; and Peloton's retail locations are where the infringement occurs.

This Court should exercise its discretion and deny Peloton's motion, particularly in light of the anticipatory nature of Peloton's declaratory judgment action, and Peloton's misleading pre-litigation correspondence.

Peloton also seeks to dismiss lululemon's allegations of trade dress

infringement and passing off under Fed. R. Civ. P. 12(b)(6). As explained in detail below, lululemon has more than met the requisite pleading standard for these claims and Peloton's motion should be denied.

## II. __BACKGROUND__

In 2016, lululemon and Peloton entered into a co-branding agreement. Declaration of Ali S. Razai ("Razai Decl."), Ex. 3, ¶ 16. Under that agreement, lululemon supplied Peloton with some of lululemon's most innovative and popular athletic apparel. Peloton then applied its own trademarks alongside lululemon's famous logo, and re-sold the co-branded apparel. Dkt. 35, ¶ 3.

In 2021, Peloton ended the co-branding agreement, and lululemon stopped supplying Peloton with authentic lululemon merchandise. Dkt. 18-1 at 4:26. Peloton began selling copies of lululemon products it had been selling under the co-branding agreement. Dkt. 35, ¶ 4.

On November 11, 2021, shortly after learning of Peloton's conduct, lululemon sent a cease-and-desist letter to Peloton, explaining Peloton's patent and trade dress infringement in detail. Razai Decl., Ex. 1. The letter demanded "that Peloton immediately stop infringing the lululemon Patents and the Align Trade Dress." *Id.* at 4. The letter demanded a response by November 19, 2021, confirming that Peloton would cease its infringement. *Id.* "[O]therwise," the letter explained, "***lululemon will file a Complaint for patent and trade dress infringement … in federal court***." *Id.* (emphasis added)

Peloton responded through counsel by email on November 15, 2021. Razai Decl., Ex. 2 at 7. In that email, Peloton's counsel represented that:

> We are beginning our ***review of the issues*** and will ***respond*** in due course. I cannot guarantee that will be by your November 19 deadline. If that presents an issue, let me know. In the meantime, if I could ask that you email me a color copy of the letter you sent to Peloton, that would be helpful. The version we have is in black

-3-

and white.

*Id.* (emphases added).  lululemon immediately responded, stating that it understood from Peloton's email "that Peloton may not be able to substantively respond to my letter by the November 19 deadline." *Id.* "As a matter of professional courtesy," lululemon continued, "we are happy to consider extending the deadline for response." *Id.* (emphasis added).  lululemon asked only that Peloton provide a firm date for its response. *Id.* Peloton then requested until November 24 to respond. *Id.* at 6.  lululemon agreed to this request, again communicating that it was expecting a response to its letter by the new deadline: "Per your request, lululemon agrees to extend the deadline for Peloton's response to November 24.  We look forward to hearing from you." *Id.* Thus, Peloton did not doubt that lululemon was expecting a "response" by November 24, and Peloton did nothing to dissuade lululemon from this belief.

Peloton, however, did not provide the response it had indicated would be forthcoming.  Instead, Peloton used the extra time, granted by lululemon as a professional courtesy, to prepare a Complaint for declaratory judgment and then race to the Southern District of New York, its home forum, to preempt lululemon from filing a Complaint in its choice of forum.  Peloton filed its Complaint in New York on the November 24 deadline it had requested—the day before the Thanksgiving holiday.  lululemon responded by filing its own Complaint for patent and trade dress infringement in this Court on Monday November 29, 2021, the first business day after the Thanksgiving weekend. Dkt. 35.  There is a complete identity of claims between the California Action and Peloton's anticipatory declaratory judgment action. *Compare* Dkts. 1 and 35, *with* Razai Decl. Ex. 3 (New York Declaratory Judgment Complaint).

### III.  MOTION TO DISMISS UNDER THE FIRST-TO-FILE RULE

### A.  Anticipatory Actions Are an Exception to the First-to-File Rule

Peloton bases its motion to dismiss upon the first-to-file rule, relying

upon its filing of its declaratory judgment action in New York two business days before lululemon filed the present infringement action.  However, as the Federal Circuit has explained, "trial courts have discretion to make exceptions to [the first-to-file] rule in the interest of justice or expediency, and we have recognized that such exceptions are not rare."  *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020).  A party's intention to preempt another's infringement suit is a critical factor in dismissing a first-filed declaratory judgment action in favor of an affirmative action filed by the true plaintiff.  *Id*.  Moreover, "[w]hen one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions."  *Id*.

Applying these factors in *Communications Test Design*, the Federal Circuit affirmed the district court's dismissal of a first-filed declaratory judgment action.  *Id*. at 1365.  There, the patentee sent a letter to a potential infringer stating that the patentee has "a good faith basis to believe" there was infringement and asking the potential infringer "whether it was willing to discuss potential terms for a patent license agreement."  *Id*. at 1359.  The letter warned that if the patentee did not receive the requested confirmation, it would sue for patent infringement.  *Id*.  While license negotiations were ongoing between the parties' executives, the potential infringer filed suit for a declaratory judgment.  *Id*.  The patentee then filed its own separate action for patent infringement in a different forum and moved to dismiss the declaratory judgment complaint.  *Id*. at 1360.

The district court dismissed the declaratory judgment action and the Federal Circuit affirmed.  The Federal Circuit held that the plaintiff "filed its declaratory judgment complaint in anticipation of [the patentee's] patent

-5-

infringement complaint," that the plaintiff's declaratory judgment suit "interfered with ongoing negotiations between the parties and did not serve the objectives of the Declaratory Judgment Act," and, on balance, the patentee's chosen forum was "a more convenient forum." *Id.* at 1363. Both the Federal Circuit and the district court noted that the declaratory judgment plaintiff "did not have the right to string [the patentee] along just long enough to get the judicial drop and file this lawsuit in its own backyard." *Id.* at 1360, 1364.

The courts in this district and throughout California likewise have routinely dismissed first-filed declaratory judgment actions that were filed under threat of litigation. For example, in *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1190 (C.D. Cal. 2006), Ford sent a cease-and-desist letter to Xoxide demanding that Xoxide stop four different forms of infringement of trademarks related to the Mustang automobile. Ford enclosed a proposed settlement agreement and demanded that Xoxide sign the agreement as is or the matter would be resolved "through litigation." *Id.* Xoxide then sent a letter to Ford agreeing to stop one of its forms of infringement, but insisting that its other three activities were lawful. *Id.* Ford then sent a second letter, again demanding that Xoxide sign the proposed agreement as is or else Ford would "seek a judicial resolution of this matter." *Id.* at 1191. Xoxide then responded by agreeing to stop a second form of infringement and requesting "2 to 3 business days to complete its consideration and response regarding" the remaining two activities. *Id.*

However, rather than responding within the time requested, Xoxide filed suit for declaratory relief in this district. *Id.* The court dismissed the action as an improper anticipatory suit. *Id.* at 1192-93. The court explained that it "may, in its discretion, rely on equitable grounds such as when the filing of the first suit evidences bad faith, ***anticipatory suit, or forum shopping***, to determine whether to depart from the first to file rule." *Id.* at 1192 (emphasis in original).

1   "Anticipatory suits are found when the plaintiff in the first-filed action filed suit
2   on receipt of specific, concrete indications that a suit by the defendant was
3   imminent, and are viewed with disfavor as examples of forum shopping and
4   gamesmanship." *Id.* The court found that Ford's letters established that suit
5   was imminent, and "Xoxide cannot credibly argue otherwise." *Id.* at 1193.
6   Xoxide's request for a short extension of time to respond, followed by filing its
7   declaratory judgment action, was clear gamesmanship. *Id.*

8       Similarly, in *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, 2009 WL
9   2049702, at *1 (C.D. Cal. July 9, 2009), Puma sent K-Swiss a cease-and-desist
10  letter, charging K-Swiss with trademark infringement and giving K-Swiss until
11  April 30 to cease its conduct. Otherwise, Puma's letter stated, it would be
12  "compelled to seek for [sic] a legal solution of this issue by enforcing our rights
13  in our full discretion by all available legal measures." *Id.* On the April 30 due
14  date, K-Swiss filed "a preemptive declaratory judgment action." *Id.* Two
15  business days later, Puma filed an infringement action in Massachusetts. *Id.*

16      The court dismissed the first-filed declaratory action in favor of the
17  second-filed Massachusetts infringement action. *Id.* at *3. "[W]hen, as here, a
18  declaratory judgment action has been triggered by a cease and desist letter,
19  equity militates in favor of allowing the second-filed action brought by the true
20  plaintiff in the dispute to proceed to judgment rather than the first." *Id.* "There
21  is very little doubt that this case was filed in anticipation of the Defendants'
22  contemplated infringement action." *Id.* "On April 30, 2009, while PUMA AG
23  was awaiting a response, K-Swiss filed this declaratory judgment action." *Id.*
24  The court explained that the first-to-file rule is "diminished" and "of limited
25  value" where, as in the present case, the parties' respective complaints were
26  filed only two business days apart. *Id.* at *2.

27      In *Charles Schwab & Co. v. Duffy*, 1998 WL 879659 (N.D. Cal. Dec. 8,
28  1998), the court again departed from the first-to-file rule because the declaratory

judgment suit was anticipatory.  *Id.* at *1.  The court reasoned that "[a]pplying the first-to-file rule would thwart settlement negotiations, as intellectual property holders would feel compelled to file suit rather than communicate with an alleged infringer."  *Id.*  In addition, "permitting this case to continue would reward a race to the courthouse."  *Id.*

Numerous other California district court cases are in accord.  *See*, *e.g.*, *Creative Nail Design, Inc. v. Mycone Dental Supply Co.*, 2012 WL 2106212, at *2-*3 (S.D. Cal. June 11, 2012) (declaratory judgment suit in patent case was dismissed as anticipatory); *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2006 WL 4117032, at *3 (S.D. Cal. Nov. 21, 2006) (refusing to defer to first-filed declaratory judgment action that was filed during an agreed-upon extension of time to respond to a cease-and-desist letter).

**B.     Peloton's Declaratory Judgment Action Was Anticipatory**

Peloton's declaratory judgment action in New York was plainly anticipatory.  Peloton responded to lululemon's cease-and-desist letter by representing to lululemon that it was reviewing the issues raised in the letter but might not be able to provide a substantive response by the stated November 19 deadline Razai Decl. Ex. 2 at 7.  Peloton then requested until November 24 to respond, *id.* at 6, and lululemon agreed "as a matter of professional courtesy."  *Id.* at ECF 6-7.  Peloton then used that extension of time to file a declaratory judgment complaint on the November 24 deadline.  Razai Decl., Ex. 3.

These facts speak for themselves and establish the anticipatory nature of Peloton's complaint.  Peloton nevertheless raises several arguments in an effort to establish that its complaint was not anticipatory.  These arguments lack merit.

First, Peloton suggests that its declaratory judgment action is not anticipatory because it did not mislead lululemon when it requested additional time to respond.  Dkt. 41-1 at 10:15-11:21.  Peloton's argument lacks merit.

As an initial matter, Peloton's request for an extension of time objectively

-8-

1    misled lululemon.   However, the parties' correspondence speaks for itself.
2    Peloton stated it was beginning its "review of the issues," it "will respond in due
3    course," it requested five extra days to respond, and it expressly invited further
4    discussions.   Razai Decl. Ex. 2 at 6-7.   Any reasonable person reviewing this
5    correspondence in good faith would conclude that Peloton was requesting more
6    time so that it could consider lululemon's demands and write back to lululemon.
7    No one would construe the correspondence as seeking an extension of time to
8    prepare a declaratory judgment suit.

9          Regardless, Peloton's argument lacks legal support.   The cases that
10   Peloton cites do not support its position that the court must consider whether
11   Peloton intended to objectively mislead lululemon.   In *Thomas Properties Grp.,*
12   *Inc. v. Strategic Advisory Inc.*, the court expressly held that the first-filed
13   declaratory judgment suit was anticipatory because the plaintiff "initiated this
14   litigation in anticipation of defendants' suit."   2012 WL 12952056, at *7 (C.D.
15   Cal. Oct. 19, 2012).   Although the court mentioned the plaintiff's misleading
16   request for an extension of time, that fact "only provided further support for [its]
17   conclusion."   *Id.*   Similarly in *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, the
18   court held that the declaratory judgment action was anticipatory because "the
19   threat of litigation remained imminent" when the plaintiff filed suit.   218 F.R.D.
20   663, 666 (N.D. Cal. 2003).   Although the court discussed that there was a
21   misleading communication from the plaintiff, ultimately the court dismissed the
22   first-filed action because it was "satisfied that plaintiff filed this action in
23   anticipation of specific, concrete indication" that a suit was imminent. *Id.*

24         Second, Peloton argues that lululemon's cease-and-desist letter contained
25   only a "general threat" of litigation because it did not specify the date or
26   location of the threatened infringement suit.   According to Peloton, declaratory
27   judgment suits filed in response to such a "general threat" of litigation are not
28   anticipatory.   *See* Dkt. 41-1 at 5:21-25, 12:15-19.   This argument has no basis in

-9-

fact or law.  lululemon's letter demanded that Peloton "confirm by **November 19, 2021**, that you will fully comply with lululemon's requests herein, **otherwise lululemon will file a Complaint for patent and trade dress infringement … in federal court**."  Razai Decl. Ex. 1 at 4 (second emphasis added).  This was a "specific, concrete indication[] that a suit by defendant was imminent," that could not have left any doubt.  *Xoxide*, 448 F. Supp. 2d at 1192.

None of the cases cited by Peloton *required* a copy of a proposed complaint or the exact location of suit to hold that the actions were anticipatory.  In fact, nearly identical language, and often softer language, repeatedly has been found to be a sufficiently firm threat of litigation to trigger the anticipatory suit rule.  In particular, the following language has been found sufficient:

- comply with demands by February 9, 2006, or the matter will be resolved "through litigation wherein Ford will seek all available remedies against you." *Id.* at 1190.

- cease infringement by March 2, 2009, or the intellectual property owner would be "compelled to seek for [sic] a legal solution of this issue by enforcing our rights in our full discretion by all available legal measures." *K-Swiss*, 2009 WL 2049702, at * 1.

- "Bell'O is willing to take all steps necessary to fully protect its intellectual properties, including commencing an action in an appropriate United States District Court if Z-Line does not comply with our aforementioned request." *Z-Line*, 218 F.R.D. at 666.

- "if we do not hear from you by the close of business next Friday, August 18, 2006 that you will comply with our demands, we have been instructed to file suit against [Defendant] for copyright infringement, trade dress infringement, false designation of origin and unfair competition and to seek compensatory and punitive damages, injunctive relief and all other remedies afforded by law." *Brighton*, 2006 WL

-10-

4117032, at *1.

     ● "if you share our client's desire to avoid litigation, please contact me within fourteen (14) days to confirm your intention to comply with these conditions." *Green Planet Inc. v. Int'l IP Holdings LLC*, 2013 WL 12146119, at *4 (C.D. Cal. Nov. 25, 2013); *see also id.* at *1.

     ● "unless we hear from you by August 1, 2013, [Defendant] will file suit in federal district court." *Trim-Lok Inc. v. Lifetime Indus. Inc.*, 2013 WL 12124283, at *1 (C.D. Cal. Nov. 6, 2013).

Contrary to Peloton's arguments, the cease-and-desist letters in these cases specified neither the date nor venue for the planned affirmative suit. Yet, in each case, the declaratory judgment action filed in response to the cease-and-desist letter was held to be anticipatory.

     Peloton next argues that it filed its declaratory judgment suit because it feared that "lululemon's track record of filing suit" could delay the resolution of its rights, not to preempt lululemon's imminent suit. Dkt. 41-1 at 12:24-27. Peloton's speculation is a manufactured argument that failed to make it even into its initial motion. *See* Dkt. 18-1. Peloton has no insight as to the negotiations in lululemon's prior actions. Peloton's characterization of lululemon's prior negotiations as "a track record of delay" is pure conjecture. Here, Peloton had no legitimate concerns about delay and uncertainty. lululemon gave Peloton a firm deadline of November 19, 2021 to respond to lululemon's letter. Razai Decl. Ex. 1. Otherwise, lululemon explained, it "will file a Complaint for patent and trade dress infringement … in federal court." *Id.* lululemon's letter provided absolute certainty that, absent a resolution of the matter by the deadline, lululemon would file suit. Moreover, contrary to Peloton's assertion, lululemon's letter posed no "risk to Peloton's reputation and business relationships." Dkt. 41-1 at 6:10-12. lululemon did not publicize its cease-and-desist letter in any way, and thus it posed no harm to Peloton's

reputation or business relationships.

Peloton then denies that it engaged in a race to the courthouse because it did not know that lululemon would file in California.  Dkt. 41-1 at 10:19-22, 10:27-11:1.  If Peloton was not concerned with gaining a perceived venue advantage, then it had no reason to mislead lululemon into believing it would receive a substantive response to its letter by November 24.  Peloton could have candidly informed lululemon that it had no interest in any out-of-court discussions and that it was planning to file a declaratory judgment action in New York to resolve this matter.  Of course, Peloton also could have responded in good faith to lululemon's letter, and potentially avoided litigation.  Instead, Peloton used the extra time it requested to surreptitiously file a declaratory judgment complaint in its own choice of forum.

Third, Peloton argues that courts consider whether the first-filing party concealed its filing of the declaratory judgment complaint while keeping up the pretense of negotiation. Peloton's argument is simply incorrect.  Dkt. 41-1 at 13:22-23.  In each of *Thomas, Xoxide*, and *Contec*, the court held that the first-filed action was anticipatory because it was filed under threat of imminent litigation.  *See supra*.  This case is no different.

## C.   The Balance Of Conveniences Does Not Warrant Rewarding Peloton For Filing An Anticipatory Declaratory Judgment Action

Peloton argues that even if its declaratory judgment action is anticipatory, the balance of conveniences still warrants dismissal of this case under the first-to-file rule.  Dkt. 41-1 at 14:23-26.  However, Peloton overlooks the obvious fact that both parties are enormous, publicly-traded companies, each having annual revenues exceeding $4 billion.  Razai Decl. ¶ 8.  For two companies of this size, each having a nationwide presence, litigation in any specific venue in the United States is not particularly convenient or inconvenient.  *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730

(S.D.N.Y. 1998) (the convenience of the parties "is less weighty when, as here, the suit is between two large corporations that regularly conduct business on a national or international basis"); *CBS Interactive Inc. v. Nat'l Football League Players Ass'n Inc.*, 259 F.R.D. 398, 409-10 (D. Minn. 2009) (convenience of the parties is insignificant where they are "large corporations that have the financial wherewithal to bear the expense of litigating this action in either forum"); *Rollenhagen v. Int'l Speedway Corp.*, 2008 WL 11509172, at *2 (W.D. Mich. Jan. 22, 2008) (convenience of "large corporations" is "entitled to little weight").   In any event, as lululemon will now explain, the balance of convenience factors weigh in favor of keeping this case in this Court.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

"[G]reat weight is generally accorded plaintiff's choice of forum."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Thus, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commw. Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Robles v. Gojo Indus., Inc.*, 2021 WL 6103364, at *3 (C.D. Cal. Aug. 26, 2021); *Int'l Med. Devices, Inc. v. Cornell*, 2021 WL 3415217, at *2 (C.D. Cal. June 15, 2021); *Danzig v. Caiafa*, 2014 WL 12601327, at *5 (C.D. Cal. Aug. 6, 2014).  Accordingly, this factor weighs heavily in favor of keeping this action in this Court.

Another factor considered is the location where the relevant agreements were negotiated and executed.  *Jones*, 211 F.3d at 498.  This, however, is a patent and trade dress infringement case.  lululemon's claims are not based on an agreement.  While the parties once entered into a co-branding agreement, neither party alleges breach of that agreement here or in New York.  Because no breach is alleged, the individuals who negotiated and executed that agreement have little relevance to this case.  The fact that lululemon informed the New York court by way of background that the parties once had a co-branding

1  agreement does not change this fact.  *See* Dkt. 18-1 at 11-12.

2      The next factor considered is "the respective parties' contacts with the

3  forum."  *Jones*, 211 F.3d at 498.   Though based in Vancouver, British

4  Columbia, lululemon has extensive contacts with this forum.   lululemon

5  maintains an office in Los Angeles which functions as lululemon's U.S.

6  headquarters and where lululemon makes most of its major company decisions

7  relating to product launch and product branding.  Razai Decl. Ex. 5 ("Fallon

8  Decl.") ¶ 4.  lululemon's Chief Product Officer, Sun Choe, resides in Los

9  Angeles and works out of this office.  *Id*.  In addition, Ashlee Fallon,

10 lululemon's Key Accounts Manager, is based in Los Angeles.  *Id*. ¶ 3.  She

11 attended two key meetings in Los Angeles with Peloton at which Peloton

12 selected the clothing that it first would market with lululemon, and later would

13 copy in violation of lululemon's patent and trade dress rights.  *Id*. ¶ 7.  The

14 selection of Los Angeles for these two meetings was no coincidence.

15 lululemon's Los Angeles facility is the only location in the United States where

16 lululemon maintains samples of all of its products and is where prototypes of

17 products are sent for lululemon's review.  *Id*. ¶¶ 5-6.

18     In addition, California, not New York, is the center of Peloton's

19 infringing activities.  Peloton maintains 13 showrooms in California, its greatest

20 number in any state, compared to only 6 showrooms in New York.  Razai

21 Decl. ¶ 7.  And Peloton maintains 7 showrooms within the Central District of

22 California, with only 3 within the Southern District of New York.  *Id.*

23 lululemon similarly focuses on the California market.  Over ███ of its U.S.

24 sales are in California, compared to only about ███ in New York.  Fallon Decl.

25 ¶ 8.  Similarly, 17% of lululemon's retail stores are located in California, and

26 just 6% are located in New York.  *Id.* ¶ 9.

27     Peloton nevertheless argues this factor favors a transfer because it is

28 based in New York, and lululemon does not maintain its worldwide

-14-

headquarters in this district.  Dkt. 41-1 at 16.  Peloton misunderstands this factor.  This factor, by its plain language, considers both parties' contacts with this forum, not the location of the headquarters of the two parties.  Peloton's contacts with New York are simply irrelevant under this factor.

The next factor is "the contacts relating to the plaintiff's cause of action in the chosen forum."  *Jones*, 211 F.3d at 498.  As just discussed, more of Peloton's in-store infringement occurs in California than in any other state.  Similarly, more of lululemon's sales occur in California than in any other state, and these sales are relevant to damages issues in this case.

Peloton argues that the co-branding agreement between the parties was executed in New York.  Dkt. 41-1 at 15:10-11.  However, as discussed above, this case does not involve any claims for breach of the parties' co-branding agreement.  It is a patent and trade dress infringement case.  Thus, the parties' co-branding agreement is irrelevant to this motion.

Additionally, lululemon's allegations of infringement are based upon Peloton's **sales** of the Accused Products and **offers to sell** those products "through Defendant's retail locations and/or on Defendant's website."  Dkt. 35, ¶ 45.  As discussed above, those retail locations are predominantly in California.

The next factor is "the differences in the costs of litigation in the two forums."  *Jones*, 211 F.3d at 498-99.  This factor is neutral.  The Central District of California would be less costly for lululemon because it maintains its U.S. headquarters in Los Angeles and many of its witnesses are based in Los Angeles.  New York presumably would be less costly for Peloton, as it is based in that forum.  As discussed above, the convenience of the parties is entitled to little weight if both parties are major corporations with a nationwide presence.

The next factor is "the availability of compulsory process to compel attendance of unwilling non-party witnesses."  *Jones*, 211 F.3d at 499.  In patent cases, "inventors' testimony is extremely important, inventors are key witnesses

and the Court gives greater weight to their convenience." *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019). Here, the sole inventor of U.S. Patent No. D923,914, Julia Breitwieser, resides in California. Razai Decl. ¶ 5. Ms. Breitwieser no longer works for lululemon and is a third-party over whom lululemon has no control. She is, however, within the subpoena power of this Court under Fed. R. Civ. P. 45(c)(1)(B)(ii).

Against this, Peloton argues that unidentified witnesses affiliated with a third-party design firm, Nike, and WITH and offers only a vague description of what these witness might testify about. Dkt. 41-1 at 17:17-18:4 (citing Whistler Decl. ¶¶ 24-25). Because Peloton has not identified these alleged witnesses or described their testimony in any substantial way, these alleged witnesses are entitled to little weight. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) ("The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include."); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001) ("Defendants do not identify any specific witness. Absent a more specific showing that particular witnesses will be necessary at trial, the court cannot consider the convenience of these unnamed witnesses.").

The final factor to be considered is "the ease of access to sources of proof." *Jones*, 211 F.3d at 499. "In assessing the ease of access to documentary proof, the key question is whether one party would experience hardship due to the location of documents if the case was not transferred." *Kosta Int'l v. Brice Mfg. Co. Inc.*, 2015 WL 13306131, at *4 (C.D. Cal. Mar. 9, 2015). "The moving party must establish the location of the documents in question, their importance to the resolution of the case, and the inability to move or copy them easily." *Id.* (quoting 15 Wright, Miller, Cooper and Freer, *Federal Practice & Procedure* § 3853 (4th ed. 2013)). "Modern technology – which enables the transmission of many documents over large distances in little time – often

renders documents' physical locations unimportant." *Id.* That is precisely the case here. Peloton, a large corporation, has made no showing that it would suffer undue hardship from bringing its trial exhibits to trial in this district. As in *Kosta*, Peloton "did not identify any indicia of hardship peculiar to this case (such as an unusually large number of documents, an inability to produce documents electronically, etc." *Id.* This factor is given little or no weight. *Id.*

In sum, all of the factors to be considered weigh in favor of this forum or are neutral. Certainly, Peloton has not made such a compelling showing of inconvenience that the anticipatory nature of its declaratory judgment action in New York should be ignored. Accordingly, Peloton's motion to dismiss under the first-to-file rule should be denied.

## IV.  PELOTON'S MOTION TO TRANSFER

Peloton argues in the alternative that this case should be transferred to the Southern District of New York under 28 U.S.C. § 1404. Dkt. 41-1 at 19:3-8. In support, Peloton relies upon the same balance-of-convenience factors discussed above. For the reasons just explained, Peloton's balance-of-convenience arguments have no merit and Peloton's motion to transfer should be denied.

## V.  PELOTON'S MOTION TO DISMISS UNDER RULE 12(B)(6)

### A.  Legal Standard Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555. In evaluating this motion to dismiss, the Court must accept as true all material factual allegations in the complaint. *Id*. at 556; *see also Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). In deciding whether a

pleading states a plausible claim for relief, the court considers the complaint's factual allegations, along with all reasonable inferences from those allegations. *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 (9th Cir. 2011).

If a court finds that a particular cause of action fails to state a claim, leave to amend is routinely granted to allow the plaintiff to allege additional facts to support its claim. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *see also* Fed. R. Civ. P. 15(a) (noting that the Court should "freely give leave when justice so requires").

**B.   Pleading Standards For Trade Dress Infringement Claims**

A claim of trade dress infringement requires plausible allegations that the trade dress "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused" with the accused products. *Int'l Jensen v. Metrosound U.S.A, Inc.*, 4 F.3d 819, 823 (9th Cir. 1993) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).   When evaluating an asserted trade dress, "it is crucial that [courts] focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create."   *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).

In addition, the asserting party must sufficiently articulate its claimed trade dress.   *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).   Courts routinely find sufficient an identification of the trade dress elements in combination with images depicting the trade dress.   *See, e.g.*, *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *1 (C.D. Cal. May 8, 2015); *see also Virgin Scent, Inc. v. Bel Air Naturals Care Corp.*, 2018 WL 5264145, at *4 (C.D. Cal. Feb. 8, 2018).

Whether a trade dress element is functional is a highly fact-intensive issue that ordinarily cannot be resolved at the pleading stage.   *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, 2019 WL 1260634, at *4 (C.D. Cal.

Mar. 18, 2019).   A design feature is functional "if the [product feature] is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995) (internal quotations omitted.). Courts "examine trade dress as a whole to determine functionality … functional elements that are separately unprotectable can be protected together as part of a trade dress." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987); *see also Five Star*, 2019 WL 1260634 at *4.   To determine whether a product feature is functional, courts consider the following factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n v. Champions Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).   However, a plaintiff "need not allege facts pertaining to every one of these factors." *TSX Toys, Inc. v. 665, Inc.*, 2015 WL 12791406, at *4 (C.D. Cal. Apr. 24, 2015).

## C.   <u>lululemon Has Adequately Identified The Align Trade Dress</u>

In its Amended Complaint, lululemon states that the Align Trade Dress "bear[s] a distinctive trade dress in the overall design of the pant" and attaches the photograph on the right. Dkt. 35, ¶ 27.   lululemon then explicitly states that the trade dress "consists of a pair of tight athleisure pants having a high waistband as shown in the example above; a lack of vertical stitching   on   said   waistband;   stitching   as



-19-

annotated by the arrows in the example above; and no visible seams running the length of the legs on the lateral (outer) sides." *Id.* at ¶ 28.

lululemon's description and corresponding images are more than adequate to put Peloton on notice of what constitutes the asserted Pedestal Trade Dress. *See Deckers*, 2015 WL 12731929 at *4 (finding a list of elements in combination with images sufficient to identify an asserted trade dress). Moreover, contrary to Peloton's arguments, the description is limiting, explicitly stating that the trade dress "consists" of specific elements.

Peloton relies on *R and A Synergy* to argue that lululemon has failed to meet the pleading standard. Peloton's reliance is misplaced. There, the plaintiff gave a generic description of the trade dress as "different styles of undersleeves, including 'basic, bell, bandeau, flutter, waterfall, halter, shirred, tunic, and trellis' and as being available 'in a variety of colors including black, white, grey, coral, pink, mint, cobalt blue, periwinkle blue, apple green, olive green, forest green, navy, red, silver, turquoise, eggplant, brown and off-white.'" *R and A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *3 (C.D. Cal. May 1, 2019). The court held that this description "failed to sufficiently identify a precise and non-generic trade dress under the applicable precedent." *Id.* at *4.

Unlike in *R and A*, lululemon has not generically recited a slew of generic features and colors to contend that each constitutes an independent protectable trade dress. Instead, lululemon has precisely described the Align Trade Dress by listing the trade dress elements in combination with an image of a product bearing the dress. *See Deckers*, 2015 WL 12731929, *4 ("Other courts have concluded that listing the elements of a trade dress and providing an image of a product bearing the dress sufficiently identifies the trade dress over which plaintiff claims exclusive rights, and this Court similarly agrees that Plaintiff has described [its] Trade Dress with sufficient particularity in this case." (citing *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 WL 55178, at *1, *3 (N.D. Cal. Jan.

-20-

7, 2009) (a "picture in combination with the pleadings regarding the shape, size, and placement of the bows and ribbons" on a five nesting box storage system identified the trade dress with sufficient particularity to avoid dismissal))). Contrary to Peloton's suggestion, the law does not require lululemon to identify the precise dimensions, curvatures, angles, or size ratios of the design. *See* Dkt. 41-1 at 19-20. Instead, trade dress law focuses "on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards*, 251 F.3d at 1257-59.

Peloton's assertion that it needs more detail to understand lululemon's asserted trade dress is particularly hollow here, because Pelton is not offering colorable variations of lululemon's landmark design—they are selling imitations of the product. Dkt. 35, ¶ 37 (showing Peloton's imitation). Peloton is well aware of what constitutes lululemon's trade dress, having copied it. There is no real dispute that Peloton's copies fall within those boundaries. Peloton asks if Align pants that are tight around the leg or others that flare out at the knee would be encompassed by the Align Trade Dress. The answer depends on whether that hypothetical design encompasses the features that are expressly recited in the Amended Complaint in combination with the attached photograph. But the features in Peloton's hypothetical are not part of the recited elements of the Align Trade Dress and would be irrelevant to the infringement analysis. Dkt. 35, ¶¶ 27-28; *AMF Inc. Sleekcraft Boats*, 599 F. 2d 341 (9th Cir. 1979).

Peloton also argues that lululemon must explain the "unifying trade dress element to the wide variety of [Align pant] products offered." Dkt. 41-1 at 23:13-18. This is incorrect. As the court in *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019), recently recognized, "the Ninth Circuit has not yet adopted the 'consistent overall look' test for trade dress claims based on a line of products." Nonetheless, the design elements identified in the Amended Complaint as comprising the Align Trade

Dress are consistent among all of lululemon's products embodying the trade dress. Dkt. 35, ¶ 27-28.  Peloton presents no evidence to the contrary.

**D.      lululemon Has Sufficiently Pled Non-Functionality**

Peloton argues that lululemon's allegations of non-functionality fails to meet the pleading standard. *See* Dkt. 41-1 at 22-23. Contrary to Peloton's assertions, lululemon pleads specific facts to support its allegation that the Align Trade Dress is non-functional:

- There are alternative designs to products that embody the claimed trade dress. *See* Dkt. 35, ¶ 33 ("Athleisure pants can have many different forms, styles, and shapes."); ¶ 34 (There are hundreds of third-party athleisure pants available in the marketplace, including from companies like Alo®, Gaiam®, Athleta®, and Zella®. These commercial alternatives show that there are many different design decisions that go into designing athleisure pants and that the Align Trade Dress is the result of decisions regarding ornamentation. Examples of commercially available alternatives can even be found on lululemon and Peloton's respective websites. Examples include [listing and attaching photographs of several alternative designs]. Further, lululemon's exclusive right to use the Align Trade Dress will not put competitors at a significant non-reputation related disadvantage because there are numerous alternative designs.").

- The designs are not a result of a comparatively simple or inexpensive method of manufacture. *See* Dkt. 35, ¶ 35 ("The design features of the Align Trade Dress are not comparatively simple or inexpensive to manufacture nor are they a competitive necessity.").

Courts have held that such allegations are more than sufficient to put Defendants on notice that the alleged trade dress is non-functional. *See Toyo Tire & Rubber Co. v. CIA Wheel Group*, 2016 WL 6138416, *4 (C.D. Cal. May 6, 2016) (holding that allegations of non-functionality were sufficient where

Plaintiffs "state the [trade dress] is not essential to the use or purpose of the tire, does not affect tire cost or quality, and does not put competitors at a non-reputation related disadvantage" and that alternate designs are available); *Millenium Labs., Inc. v. Ameritox, Ltd.*, 2012 WL 4863781, *4 (S.D. Cal. Oct. 12, 2012) (holding that plaintiff adequately pled non-functionality by alleging that "[t]he overall visual impression that the arrangement of the trade dress elements create is aesthetic and not functional). Ameritox's services and report would function just as well as they otherwise would without the similar distinctive features it has copied from Millennium. The cost or quality of Ameritox's services and reports are not affected by incorporating those features."); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1141 (N.D. Cal. 2010) (holding that plaintiff adequately alleged non-functionality by stating: "The information to be displayed in the audit report could be selected, arranged, and presented in any number of ways. Indeed, the audit report format had been used by no one else in the field until Ellie Mae decided to replicate DocMagic's software in 2009.")

Peloton cites *Mosaic Brands*, *Glassybaby*, and *Deckers* in support of its argument that lululemon has not adequately pled non-functionality of the Align Trade Dress. However, in each of those cases, the plaintiff made no attempt to plead functionality. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, 2020 WL 6821013, at *6 (C.D. Cal. Oct. 29, 2020) (granting a motion to dismiss where the "Plaintiff broadly allege[d] that the nonfunctional aspects of its 'original designs and products' are distinctive"); *Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 2218583, *2 (W.D. Wash June 6, 2011) (asserting that the hand-blown glass containers was distinctive does not show "how it is nonfunctional"); *Deckers*, 2015 WL 12731929 (granting motion to dismiss where the plaintiff made no attempt to plead non-functionality.).

/ / /

**E.    False Designation Of Origin, Passing Off, And Unfair Competition**

lululemon has also alleged claims of false designation of origin, passing off and unfair competition under the 15 U.S.C. § 1125(a) and unfair competition under California state law.  Because each of these claims is based on the same alleged conduct by Peloton, each of these claims should survive this motion to dismiss for all the reasons discussed above.  *Millennium Labs.*, 817 F.3d at 1131 (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).

lululemon's claim claims of false designation of origin, passing off, and unfair competition under § 1125(a) are also sufficient for an additional independent reason. lululemon has sufficiently pled that in light of Peloton's history of selling lululemon products under a co-branding relationship, it's subsequent sale of imitation lululemon products misled the public into believing that Peloton's products were manufactured by lululemon.

Specifically, lululemon has pled that the parties had a co-branding relationship, under which "lululemon supplied Peloton" with products, and that "Peloton then applied its own trademarks to [those products], alongside lululemon's [marks], and re-sold the co-branded apparel." Dkt. 35, ¶ 3. "[T]he sales of genuine lululemon products conditioned customers to expect that genuine lululemon products were being sold on Defendant's website." *Id.*, ¶ 82.

Subsequently, Peloton "imitated several of lululemon's innovative designs and sold knock-offs of lululemon's products, claiming them as its own," including at least six separate designs explicitly identified in the Amended Complaint.  *See* Dkt. 35, ¶¶ 37, 46, 49, 52, 55, and 58; *id.*, ¶ 4. "For a period of time, at least some of Peloton's Imitations were sold on Defendant's website while genuine lululemon products were also sold on Defendant's Website." *Id.*, ¶ 83. lululemon concludes that Pelton has falsely designated the origin of its goods "[b]y selling copies of lululemon's designs, including the Peloton Imitations through the same retail outlets that Defendant has used to sell

cobranded lululemon products," which is likely to "cause confusion, or to cause mistake, or to deceive" the public.  *Id.*, ¶ 84. lululemon's allegations are more than sufficient to plead false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a).  *Sambonet Paderno Indus., S.P.A. v. Sur La Table, Inc.*, 2015 WL 4498795, *6 (C.D. Cal. July 23, 2015) (claims were sufficiently pled under § 1125(a) where "[defendant] is misleading the public into believing that its [product] was manufactured by [the plaintiff].").

Peloton's reliance on case law to argue the contrary is misplaced. *See R and A*, 2019 WL 4390564, *14 (dismissing plaintiff's claims of passing off where the "only allegations conceivably pertaining to passing of … [were] wholly conclusory and unsupported by any factual allegations contained in the FAC.").  Here, lululemon has pages of factual allegations in its Amended Complaint supporting its claims for false designation of origin, passing off, and unfair competition. Peloton's motion should be dismissed.

## F.   lululemon Should Be Granted Leave To Amend If Necessary

If the Court were to grant any portion of Peloton's motion to dismiss, lululemon requests leave to amend.  If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleadings could not be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Indeed, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).  Pursuant to Rule 15(a), leave to amend shall be freely given when justice so requires, bearing in mind the underlying purpose of Rule 15 "to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *U.S. v. Webb*, 655 F.2d 977, 978 (9th Cir. 1981).  Leave to amend is appropriate here if the court grants any part of the motion.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 3, 2022          /s/ Ali S. Razai
                              Craig S. Summers
                              Ali S. Razai
                              Susan M. Natland
                              Brandon G. Smith

                              Attorneys for Plaintiff
                              lululemon athletica canada inc.

55012930