| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 | Steven N. Feldman (SBN 281405) steve.feldman@lw.com |
| 3 | 1271 Avenue of the Americas New York, NY 10020 |
| 4 | Phone: (212) 906-1200 |
| 5 | Fax: (212) 751-4864 |
| 6 | Matthew Walch (*pro hac vice* forthcoming) |
| 7 | matthew.walch@lw.com 330 North Wabash Avenue, Suite 2800 |
| 8 | Chicago, IL 60611 Phone: (312) 876-7700 |
| 9 | Fax: (312) 993-9767 |
| 10 | Robert J. Ellison (SBN 274374) |
| 11 | robert.ellison@lw.com 10250 Constellation Blvd., Suite 1100 |
| 12 | Los Angeles, CA 90067 Phone: (424) 653-5500 |
| 13 | Fax: (424) 653-5501 |
| 14 | Rebekah L. Soule (*pro hac vice*) |
| 15 | rebekah.soule@lw.com 555 Eleventh St. NW, Suite 1000 |
| 16 | Washington, D.C. 20004-1304 Phone: (202) 637-2200 |
| 17 | Fax: (202) 637-2201 |
| 18 | *Counsel for Defendant Peloton Interactive, Inc.* |

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LULULEMON ATHLETICA CANADA, INC., a Canadian corporation, | ) ) ) ) | CASE NO. 2:21-CV-09252-MEMF-SHK |
| Plaintiff, | ) ) | **PELOTON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PELOTON'S MOTION TO STAY, DISMISS, OR TRANSFER THE AMENDED COMPLAINT** |
| v. | ) ) | |
| PELOTON INTERACTIVE, INC., a Delaware corporation, | ) ) ) | Hearing Date: March 24, 2022 Time: 10:00 AM Courtroom: 8B |
| Defendant. | ) ) | Judge: Maame Ewusi-Mensah Frimpong |

## I. INTRODUCTION

The Parties agree that this action should be stayed while the Southern District of New York ("S.D.N.Y.") determines whether the above captioned action or the first-filed action pending in New York ("New York Action") should proceed. Joint Case Mgmt. Statement at 2, 4 (Dkt. 43). Peloton respectfully submits that the Court can end its analysis of Peloton's motion there and stay the case until the New York Court resolves which jurisdiction should hear the Parties' dispute.

But should the Court decline to stay the case, as discussed below, this Action should be dismissed under the first-to-file rule, or transferred to the S.D.N.Y. under 28 U.S.C. § 1404. lululemon's Opposition argues that the New York Action was improperly anticipatory and justifies a departure from the first-to-file rule, but the reasons advanced by lululemon do not compel this exception. Moreover, even if they did, the case should still be dismissed or transferred based on an analysis of the applicable balance of convenience factors. Finally, lululemon's attempts to save its trade dress infringement, false designation of origin, and unfair competition claims from the flaws identified in Peloton's Motion are unsuccessful.

## II. IN THE ALTERNATIVE TO A STAY, THIS CASE SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE OR TRANSFERRED

lululemon has not satisfied its burden of establishing a compelling circumstance to overcome the first-to-file rule. *See In re Nitro Fluids*, 978 F.3d 1308, 1311 (Fed. Cir. 2020). As discussed in Peloton's opening brief and below, Peloton properly exercised its right under the Declaratory Judgment Act when it filed the New York Action and the balance of conveniences weighs in favor of the parties' dispute being heard before the New York Court.

### A. The New York Action is Not *Improperly* Anticipatory

Declaratory judgment actions are ***by their nature*** "anticipatory," so the question that must be answered when determining whether to depart from the first-to-file rule is whether the first-filed declaratory judgment action is ***improperly*** anticipatory. Despite it being ***lululemon***'s burden to show that the New York Action is improperly anticipatory, such that it justifies an exception to the first-to-file rule, lululemon principally assumes that the inherently anticipatory nature of the first-filed declaratory judgment action automatically renders it improper. This cannot be so,

because adopting that approach would eviscerate the purpose of the Declaratory Judgment Act, which allows a party accused of infringement to proactively seek a judgment that determines its legal rights. *See, e.g., Royal Queentex Enters. v. Sara Lee Corp.*, 2000 WL 246599, at *4 (N.D. Cal. Mar. 1, 2000) ("Royal Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and desist letter."). Instead, as discussed in Peloton's Motion, courts holistically consider whether a case is ***improperly*** anticipatory such that the Court should depart from the first-to-file rule. lululemon fails to justify a departure here.

First, as explained in Peloton's Motion, courts consider whether there has been a misrepresentation by a party about a willingness to settle to buy time before filing an action. *See* Mot. at 4 (discussing *Thomas Properties Group* and *Z-Line*). lululemon argues that Peloton misunderstands the law and the cited cases and that this is not in fact a relevant consideration. Opp. at 9:9-23. It is lululemon who misunderstands the law and these cases. Peloton's Motion is not arguing that courts ***only*** consider misrepresentations regarding willingness to settle, but that it is one of several considerations, just as the courts in *Thomas Properties Group* and *Z-Line* concluded. *See also Internet Brands, Inc. v. Whitinger*, 2011 WL 13217758, at *3 (C.D. Cal. Feb. 14, 2011) ("[T]he fact that Plaintiff and Defendant do not appear to have been engaged in any settlement discussions prior to the filing of the Texas Action weighs against finding an anticipatory suit exception, since the exception is meant to prevent parties from using settlement discussions to 'ambush' the opposing party with a lawsuit in an inconvenient forum."). And on a factual level, contrary to lululemon's characterization of the discourse between the parties (*see* Opp. at 9:2-4), Peloton neither indicated interest in settlement nor invited discussions regarding the same. Peloton's statement that it would be "[h]appy to discuss this matter . . . if there are additional things ***you*** think we should be aware of" (Dkt. 47-2 at 2) (emphasis added) is at most an invitation for lululemon to send additional information regarding its infringement and misappropriation allegations that it may have omitted from its letter, not an invitation to discuss settlement.

Next, rather than addressing the question of whether there was a race to the courthouse to deprive lululemon of its chosen venue, lululemon argues that an imminent threat of litigation is

sufficient on its own to make a subsequent declaratory judgment action improperly anticipatory. lululemon also claims that the language in its November 11 letter constitutes an imminent threat of litigation. lululemon is wrong on both counts. Its November 11 letter does not provide any indication of when or where lululemon intended to file suit once its deadline for Peloton to comply with its demands passed. As discussed in Peloton's Motion, the most obvious way a party communicates that it intends to actually file suit (and where) is to attach a proposed complaint, clearly communicating it is poised to act. *See* Mot. at 12 (discussing *Communications Test Design, Inc. v. Contec, LLC,* 952 F.3d 1356, 1359 (Fed. Cir. 2020); *Creative Nail Design, Inc. v. Mycone Dental Supply Co.*, 2012 WL 2106212, at *1 (S.D. Cal. June 11, 2012)). Alternatively, a party can simply state when and where it intends to file, which lululemon also did not do.

In an attempt to minimize the significance of its unclear statement of intent, lululemon argues that courts have found "nearly identical language" to lululemon's sufficient to indicate imminence and make a subsequent declaratory judgment action improperly anticipatory. Opp. at 10:7-11:8. But lululemon ignores that each of those decisions did not turn *solely* on the language of demand letters. For example, as Peloton previously discussed (Mot. at 12:1-4), in *Xoxide, Inc. v. Ford Motor Co*, Xoxide filed its case as "insurance" while the parties engaged in multiple rounds of settlement negotiations where Xoxide had received multiple letters stating that Ford intended to file suit. 448 F. Supp. 2d 1192, 1194 (C.D. Cal. 2006). The other cases cited by lululemon are similar. *See K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, 2009 WL 2049702 (C.D. Cal. July 9, 2009) (dismissing first-filed case where parties had engaged in back-and-forth settlement negotiations in which Puma reiterated multiple times that it would seek enforcement); *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 666 (N.D. Cal. 2003) (noting that it was "readily apparent that Z-Line understood that [exploring settlement possibilities] was the reason behind the [two deadline] extensions"). Meanwhile, in *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, defendant's own attorney characterized the copyright and trade dress holder's demand in return correspondence as a "threat of imminent litigation." 2006 WL 4117032, at *3 (S.D. Cal. Nov. 21, 2006). In contrast, as discussed in Peloton's Motion, lululemon's letter appeared to be nothing more than a vague threat designed to bring Peloton to the settlement table. Such a conclusion is

3

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

further supported by lululemon's approach in similar cases. *See* Mot. at 12:24-13:3. Imminence required that lululemon do something "more than blowing smoke about a potential lawsuit." *Bryant v. Oxxford Exp., Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000) (internal quotes and citations omitted); *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 960 (N.D. Cal. 2008) ("A letter which suggests the possibility of legal action . . . in order to encourage or further a dialogue, is not a specific, imminent threat of legal action.").

Perhaps the most significant difference between the cases lululemon cites and the situation here, is that in almost every case where the court found the declaratory judgment action to be improperly anticipatory, the competing action was filed in the natural plaintiff's home venue, where it was incorporated or had its headquarters. That is not the case here. Nor did lululemon give any indication that, were it to sue, it would choose to file somewhere other than New York. *See* Mot. at 13:7-21. Importantly, lululemon does not dispute this. Opp. at 12:2-12. It makes no claim that Peloton should have known it intended to file elsewhere, and instead argues that Peloton should have engaged in settlement discussions or given lululemon notice of Peloton's intent to file so lululemon could indicate its preferences. *Id.* But lululemon had the opportunity to indicate its preference in its November 11 letter and chose not to. While Peloton sought to deal with lululemon's claims expeditiously given all that was at stake, nothing supports a finding that it raced to the courthouse in an effort to forum shop and/or deprive lululemon of its natural choice of forum.

Finally, acknowledging that Peloton never engaged in settlement discussions and never hid its filing of the New York Action, lululemon argues that concealing the filing of a declaratory judgment action while entertaining settlement discussions is simply irrelevant. lululemon claims that "[i]n each of *Thomas*, *Xoxide*, and *Contec*, the court held that the first-filed action was anticipatory because it was filed under threat of imminent litigation;" but each of the courts in those cases also expressly considered the first-filing party's concealment of its filing of a complaint while the parties engaged in settlement negotiations as evidence supporting compelling circumstances to deviate from the first-to-file rule. *See* Mot. at 13:22-14:9.

### B. The Convenience Factors Favor New York

Even if the Court were to agree that Peloton's New York Action was improperly

4

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

anticipatory, it should still dismiss or transfer the action to the New York Court based on the balance of convenience factors. lululemon's arguments as to how these factors favor this Court are unavailing. As an initial matter, lululemon argues that for big companies like Peloton, "litigation in any specific venue in the United States. . . is not particularly convenient or inconvenient," – thus convenience is not an issue. *See* Opp. at 12:25-13:11. Were this actually true, the Federal Circuit would not have issued 18 mandamus orders in the last two years **alone**, ordering cases filed against companies like Google, Apple, and Meta Platforms (f/k/a Facebook) transferred out of the Western District of Texas for *forum non conveniens*. Soule Decl. Ex. A. None of the cases cited by lululemon support its contention. *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) (finding that convenience would be determined by location of witnesses and documents related to the development of the allegedly infringing device); *CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*, 259 F.R.D. 398, 409-10 (D. Minn. 2009) (stating that "there is little difference in convenience" to the parties where neither party was a resident of either proposed venue); *Rollenhagen v. Int'l Speedway Corp.*, 2008 WL 11509172, at *2 (W.D. Mich. Jan. 22, 2008) (finding convenience to large defendant corporations was outweighed by convenience to the individual plaintiffs).

The other reasons offered by lululemon for why the facts do not support the S.D.N.Y. hearing the parties dispute in lieu of this Court are no more persuasive.

***The location of the relevant agreements is New York.*** lululemon does not dispute this or that the individuals most knowledgeable about the parties' co-branding agreement are in New York. lululemon's argument that its "claims are not based on an agreement" (Opp. at 13:23-24) is undermined by lululemon's own pleadings, which puts the parties' prior relationship that was governed by the co-branding agreement front and center as the basis for its unfair competition claims. *See* Am. Compl. at ¶¶ 82-84; Opp. at 24:8-25:2. lululemon cannot have it both ways.

***lululemon's choice of forum is granted little deference because the center of gravity of this dispute is in New York.*** As noted in Peloton's Motion, deference to a patentee's choice of forum is "reduced when the operative facts occur outside of the forum." *Spyder Techs., Inc. v. HTG Molecular Diagnostics, Inc.*, 2021 WL 242866, at *2 (N.D. Cal. Jan. 25, 2021). Despite

5

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

characterizing this case as a "patent and trade dress infringement case" (Opp. at 13:22-23), lululemon ignores the law about how the "center of gravity" in patent cases is "where significant marketing, engineering, and pricing decisions are made regarding the accused [infringing products]." *Id.*; *see* Mot. at 15:25-16:14 (discussing case law). As explained in Peloton's Motion, these decisions with respect to the accused products in this case are all made in New York. *Id.*

***The parties' contacts with both forums favor New York.*** lululemon ignores Federal Circuit law regarding a party's contacts with a forum. Specifically, lululemon argues that the case should be heard before this Court because lululemon has extensive contacts in the forum and Peloton has more retail stores in California. Opp. at 14:18-26 (asserting store locations are relevant because its claims are based on "Peloton's **sales** of the Accused Products and **offers to sell** those products 'through [Peloton's] retail locations" (emphasis in original)). But the Federal Circuit has expressly rejected the proposition that a district has "substantial interest" simply based on sales in the district where the allegedly infringing product is sold nationally. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); Mot. at 16:15-17:7. Peloton sells the accused products nationally, and the "center of gravity" of this case is in New York. *See* Mot. at 15:25-16:14; *supra* at 5:25-6:5. And as to lululemon's connections with this forum, lululemon notably ignores the other side of the equation and says nothing of its significant connections to New York, which are clear from the parties' course of dealing. Whisler Decl. ¶¶ 14-23. This factor favors New York.

***The cost of litigation will be greater in this District.*** As explained in Peloton's Motion, the bulk of the evidence and most of the witnesses with knowledge about the allegedly infringing products are located in New York. *See* Mot. at 17:8-16. In contrast, lululemon tries to argue that litigating here would provide the same amount of cost savings because a few witnesses (who had little to no interaction with Peloton) are located here. This simply is not the case as there are numerous witnesses from both parties based in New York and most of the documents and discovery to be taken in the case are in New York. And as noted above, lululemon's assertion that "the convenience of the parties is entitled to little weight if both parties are major corporations with a nationwide presence" is incorrect.

***Most non-party witnesses are located outside of California.*** As discussed in Peloton's

6

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

Motion, most of the third parties that Peloton is aware of with knowledge about the design and development of the allegedly infringing products are located in New York. *See* Mot. at 17:17-18:1. lululemon criticizes Peloton's Motion for purportedly failing to identify witnesses and providing only a vague description of the subject of their testimony. *See* Opp. at 15:26-16:9. But this ignores the fact that Peloton's motion identified Nike, WITH, and a New York-based third-party designer as the designers and/or suppliers of the accused products. *See* Mot. at 13:3-10. lululemon also ignores that it would be up to each of the third parties to identify their corporate representatives – not Peloton. Further, Peloton noted that it expects these corporate and individual witnesses to "offer key testimony regarding the development and purchase of the products at issue." *Id.* at 13:10-13. Thus, lululemon's criticism is unfounded.

lululemon instead argues that the parties' dispute should be heard here because one of the many inventors for its asserted patents allegedly resides in Northern California. *See* Opp. at 15:26-16:6; Am. Compl. Exs. 2-7 (Dkt. 35-2-7). Yet lululemon offers no description of what the inventor might testify about. lululemon also ignores that this Court would not have the power to compel her to testify at a deposition, and could only compel her to testify at trial if it concluded it would not impose a substantial expense. Fed. R. Civ. P. 45(c)(1)(B)(ii). Here, non-party witnesses with knowledge relevant to infringement—the Parties' primary dispute—are primarily in New York.

***The primary sources of proof are in New York.*** lululemon does not appear to dispute that most of the relevant documentary proof is in Peloton's possession. Rather, it alleges that Peloton would not "suffer undue hardship" because "modern technology . . . renders documents' physical locations unimportant." *See* Opp. at 16:27-17:3. This is inconsistent with the law. Peloton's apparel team, relevant documents, and physical evidence are located in New York. Mot. at 18:5-19. And while courts have found that "advances in information technology have lessened the importance of this factor, the location of physical documents nevertheless remains a relevant factor." *Shipping & Transit LLC v. Adorama, Inc.*, 2016 U.S. Dist. LEXIS 188063, at *9 (C.D. Cal. Aug. 23, 2016); *see also Nanografix Corp. v. Pollard Banknote Ltd.*, 2019 U.S. Dist. LEXIS 90049, at *16 (C.D. Cal. Feb. 28, 2018) (same); Mot at 18:13-16. lululemon's citation to *Kosta*, a breach of contract action, and criticism that Peloton did not identify "an unusually large number

of documents, an inability to produce documents electronically, etc." is misplaced, where courts in this district hearing patent cases give weight to the location of physical evidence and Peloton has already explained that practically all of its physical evidence relevant to this case is in New York. Taken together, the convenience factors favor New York and outweigh lululemon's claim that the New York Action was improper. For these reasons, should this Court decline to stay this case, the case should be dismissed under the first-to-file rule or transferred to the S.D.N.Y.

### III. LULULEMON'S TRADE DRESS, FALSE DESIGNATION, AND UNFAIR COMPETITIONS SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Should this Court not stay, dismiss, or transfer this case in its entirety, it should at least dismiss lululemon's claims for trade dress infringement and unfair competition. *See* Mot. at § V.

#### A.    lululemon's Trade Dress Infringement Claim Should Be Dismissed

lululemon first tries to save its claim for trade dress infringement by arguing that its description of its trade dress in combination with the image of the relevant product provide the required specificity. Opp. at 19-20. lululemon's reliance on *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.* is misplaced. 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015). Unlike the plaintiff in *Deckers*, rather than actually describing what it is about its "stitching" that constitutes its purported trade dress and using a picture to illustrate its description, lululemon forgoes offering a description and relies on an ambiguous picture alone. lululemon's citation to *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.* is similarly insufficient. 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009). In *Axis*, the plaintiff included a written description of all the details of its trade dress along with a picture to further illustrate the "shape, size, and placement of the bows and ribbons" it had already described. *Id.* By not including a description, it is unclear what it is about the stitching lululemon is claiming makes up its trade dress, or even what the arrows in the included picture are pointing to. *See* Mot. at 21. By no means is Peloton suggesting that lululemon was required to "identify the precise dimensions, curvatures, angles, or size ratios of its design" (Opp. at 21:4-5), but the law is clear that it must do more than say "see picture."

lululemon's attempt to rely on a picture to make up for what it does not describe is especially problematic where lululemon expressly states the picture is merely an "example." Am.

8

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

Comp. ¶ 28. As Peloton noted in its Motion, lululemon offers a wide variety of styles under the Align product name; but what is entirely unclear from lululemon's vague description of its purported Align trade dress is whether some or all of the offered products embody the Align trade dress it is trying to claim. Mot. at 21:25-22:1. lululemon argues that it has no obligation to explain the "unifying trade dress element to the variety of [Align pant] products offered," because this Circuit has not adopted the "consistent overall look" test. Opp. at 21:22-27. While lululemon may be correct that such a test has not been adopted, the very case it cites makes it clear that even without the test, a plaintiff must still clearly articulate its trade dress. *Id.* (citing *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) (finding the claimed trade dress over a wide variety of products was not sufficiently articulated). lululemon also responds that "the design elements identified in the Amended Complaint as comprising the Align Trade dress are consistent among all of lululemon's products embodying the trade dress." Opp. at 21:27-22:2. This reasoning is entirely circular. The fact remains that, from the Amended Complaint, it is unclear what specifically lululemon is claiming to be the Align trade dress.

Seemingly recognizing the deficiencies in its description, lululemon also argues that notice is not an issue here because "Peloton is well aware of what constitutes lululemon's trade dress, having copied it." Opp. at 21:9-21. Again, this reasoning is circular. If it were enough to plead that an alleged infringer copied its products, then there would be few instances where a trade dress allegation would ever be susceptible to a motion under Rule 12(b)(6).[1]

As detailed in Peloton's Motion, lululemon's failure to adequately specify what constitutes its trade dress also dooms its attempt to plead non-functionality. Mot. at 23:8-18. Given this and the unresolved issues regarding lululemon's description of its alleged trade dress, lululemon's claim for trade dress infringement should be dismissed again.

B.     **lululemon's False Designation and Unfair Competition Claims Fail**

---

[1] It is not apparent why lululemon cites broadly to *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (evaluating whether use of the name Sleekcraft infringed on the registered trademark name Slickcraft). In any event, that case is inapposite. The Ninth Circuit was reviewing a ruling on a motion for summary judgment on the issue of whether there was a likelihood of confusion of a trademark, not whether the plaintiff had sufficiently pled its trade dress allegations.

As discussed in Peloton's Motion, lululemon's failure to adequately plead its trade dress claim is fatal to lululemon's false designation and unfair competition claims under federal and California state law.² *See* Mot. at § V.B. Nonetheless, lululemon's false designation and unfair competition claims also fail because lululemon has not pled adequate facts in support. First, the theory that lululemon advances—that Peloton falsely designated the origin of its goods by selling through the same channels Peloton used to sell co-branded lululemon products—is, in itself, conclusory. lululemon cites to no cases where a court has accepted this theory.³ Second, lululemon's allegations still lack the key component of a false designation claim: that Peloton is offering products in an effort to pass them off as lululemon products. As explained by the court in *Deckers*,

> It is immaterial for the purposes of Deckers's false-designation claim that JC Penney may have misappropriated the Bailey Button Boot trade dress, as the Supreme Court made clear that "the phrase 'origin of goods' is ... incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." Unless JC Penney sold Deckers boots as its own—thus changing the "origin" for Lanham Act purposes—the fact remains that JC Penney is the origin of its own goods. Deckers may not use § 1125(a) as "a species of perpetual patent and copyright" to attach Lanham Act liability to what is more properly the province of patent and copyright law."

45 Supp.3d at 1185-86 (internal citations omitted); *cf. Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("The right question . . . is whether the consumer knows who has produced the finished product."). Given the above, lululemon's false designation and unfair competition claims should be dismissed.

**IV.   CONCLUSION**

For the reasons set forth above, and those articulated in Peloton's Motion, this Court should grant Peloton's requested relief. *See* Motion at 25:20-26.

---

² Even if lululemon had made a valid trade dress claim regarding its Align pants, doing so would only save its false designation of origin, passing off, and unfair competition claims with respect to Peloton's One Luxe Tight.

³ The single case lululemon cites is inapposite and supports only its initial argument that pleading a valid trade dress infringement claim will support a claim for false designation of origin. Opp. at 25 (citing *Sambonet Paderno Indus., S.P.A. v. Sur La Table, Inc.*, 2015 WL 4498795, *6 (C.D. Cal. July 23, 2015)).

10

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.

Date: March 10, 2022

Respectfully submitted,

*/s/ Steven N. Feldman*
LATHAM & WATKINS LLP
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Phone: (212) 906-1200
Fax: (212) 751-4864

Matthew Walch (*pro hac vice* forthcoming)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Phone: (312) 876-7700
Fax: (312) 993-9767

Robert J. Ellison (SBN 274374)
robert.ellison@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Phone: (424) 653-5500
Fax: (424) 653-5501

Rebekah L. Soule (*pro hac vice*)
rebekah.soule@lw.com
555 Eleventh St. NW, Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Fax: (202) 637-2201

*Counsel for Defendant Peloton Interactive, Inc.*

11

PELOTON'S REPLY MEMO I/S/O
PELOTON'S MOTION TO STAY, TRANSFER,
OR DISMISS FIRST AM. COMPL.